# Porter *v.* Commonwealth Casualty Co., Appellant.

*Beneficial associations—Lodge system—Casualty company—Assuming obligations of other company—Application—Laws—Insurance policies—Act of May 11, 1881, P. L. 20—Evidence—Prima facie—Presumption—Burden of proof—Oral evidence—Admission or statement of counsel.*

1. Certificates of membership in beneficial associations are not insurance policies within the meaning of the Act of May 11, 1881, P. L. 20; hence, when the application for membership and laws of an association of this kind are by reference made part of the contract of membership, they must, if obtainable, be placed in evidence by plaintiff in a case against the association, unless he gives a good and legally sufficient reason for not doing so, or defendant produces them. Of course, if it be shown the association in question is conducting an insurance business that will suffice.

2. If the application and laws are expressly referred to in and made part of the contract sued upon, they must be presumed to exist, until proof to the contrary appears.

3. The character of the business of an incorporated association having the name of "Fraternities Accident Order" must be determined by the proved facts, although the presumption is that the business is what the association, in its certificate of membership, declares it to be; but this is prima facie only, and may be overcome by evidence.

4. In an action upon a contract of membership of such an order, to recover death benefits, it is reversible error for the court to rule as a matter of law that the certificate of membership was a "contract of life insurance," notwithstanding the presumption to the contrary, and the fact that the evidence depended upon to make out plaintiff's case, both in this and other respects, was largely oral, which required the issues to be submitted to the jury—particularly the question whether the "Fraternities Accident Order" was actually carrying on an insurance business.

5. Where all obligations of the Fraternities Accident Order are assumed by a casualty company, the latter stands in the same position as the order. The latter's certificate remains the contract or application of the order, the casualty company merely undertaking to carry out its terms. The application for membership and the by-laws of the order are, prima facie, parts of the contract, to be received in evidence for the purpose of accurately determining the extent of the casualty company's liability.

6. In such case, plaintiff must either obtain, and attach to the contract in suit, copies of the application and by-laws, or prove the refusal of defendant to produce them on notice, unless he otherwise legally explains their absence.

7. Where plaintiff stood squarely on a position that the order conducted an insurance business, and the notes of testimony stated: "Counsel for defendant says there is no question for the jury and ask binding instructions for defendant," such statement of counsel must be construed to mean that they simply contended the proofs relied upon by plaintiff were insufficient to sustain her position, and not that, if such contention failed, they admitted the right of the trial judge summarily to withdraw the case from the jury and pass upon the oral evidence, as he did in directing a verdict for plaintiff.

Argued April 19, 1920. Appeal, No. 127, Jan. T., 1920, by defendant, from judgment of C. P. Huntingdon Co., Sept. T., 1918, No. 28, on verdict for plaintiff in case of Rebecca H. Porter v. Commonwealth Casualty Co. Before BROWN, C. J., MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ. Reversed.

Assumpsit to recover death benefits. Before BAILEY, P. J.

The facts are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $2,148.66. Defendant appealed.

*Error assigned*, inter alia, was in overruling motion for judgment n. o. v.

*C. William Freed*, with him *H. W. Petriken*, for appellant.—By the terms of the certificate of membership, the application and laws of the order were a part of the contract, and the certificate of membership was not admissible unless accompanied by such application and laws: American Underwriters Assn. v. George, 97 Pa. 238; Jones v. Com. Casualty Co., 255 Pa. 566.

While it is admitted and conceded that defendant corporation is a casualty insurance company, neverthe-

less, the record and pleadings in this case show that defendant corporation assumed the contracts of the said Fraternities Accident Order and its members: American Underwriters Assn. v. George, 97 Pa. 238.

*W. M. Henderson,* for appellee.—Whether the Fraternities Accident Order was in fact engaged in the insurance business was an issue to be determined by the court upon the facts at the trial of the case: Marcus v. Heralds of Liberty, 241 Pa. 429; Lycoming Mut. Ins. Co. v. Sailor, 67 Pa. 108; American Underwriters Assn. v. George, 97 Pa. 238; Lycoming Fire Ins. Co. v. Storrs, 97 Pa. 354.

Membership certificate was admissible without the application because the Fraternities Accident Order was engaged in a life and accident insurance business and was subject to the provisions of the Act of 1881: Marcus v. Heralds of Liberty, 241 Pa. 429; Jones v. Com. Casualty Co., 255 Pa. 567.

The death benefit of $2,000 contracted for in this case by the Fraternities Accident Order, made this an insurance contract: Com. v. Keystone Benefit Assn., 171 Pa. 465.

OPINION BY MR. JUSTICE MOSCHZISKER, May 10, 1920:

Rebecca H. Porter, the beneficiary named in a contract between the Fraternities Accident Order and her husband, William A. Porter, now deceased, sued to recover $2,000 from the Commonwealth Casualty Co., which had assumed all the obligations of the former concern. The trial judge gave binding instruction for plaintiff, and a verdict was rendered accordingly, upon which judgment was entered; defendant has appealed.

March 17, 1902, the before-mentioned Order, a corporation chartered under the law of this State, issued the certificate, or contract, in suit, whereby it agreed to pay plaintiff not over the sum claimed, upon proof of her husband's death "through external, violent and ac-

cidental means"; uncontradicted testimony was produced, tending to show William A. Porter so died and that, if liable at all, defendant owed his widow the amount awarded her.

The certificate in controversy particularly provides that the "application" for membership and "laws" of the order shall be read into the contract, and the applicant expressly agrees to comply therewith. In excuse for not setting forth such application and laws, as part of the contract declared upon, plaintiff first averred she was unable to procure copies, "although several requests had been made of defendant therefor"; but this allegation was denied by the latter, who, in one of the affidavits of defense, gave, what it alleged to be, facsimiles of the desired documents, stating they would be furnished on demand, and that it had a substantial defense, based thereon—which need not be elaborated here.

Subsequently, in an amendment to her declaration, plaintiff averred that the Fraternities Accident Order, while purporting to carry on a beneficial association, was in fact conducting an insurance business, the contract in suit being really an insurance policy, and, as neither the application for membership nor laws of the Order were originally attached to such policy, the contract was complete without them, under the Act of May 11, 1881, P. L. 20; plaintiff stood on this position, and it was adopted by the trial judge as ruling the case.

Since the trial, in an opinion sustaining judgment for plaintiff, the court below states and lays emphasis on the fact that there was no evidence presented to show the "existence of any laws, rules or regulations" of the Fraternities Accident Order; but, as these are expressly referred to in and made part of the contract sued upon, they must be presumed to exist, until proof to the contrary appears.

It is settled with us that certificates of membership in beneficial associations are not insurance policies within the meaning of the Act of 1881; hence, when the appli-

cation to and laws of an association of this kind are by reference made part of the contract of membership, they must, if obtainable, be placed in evidence by plaintiff, unless he gives a good and legally sufficient reason for not doing so, or defendant produces them. Of course, if it be shown the association in question is conducting an insurance business, that will suffice: Marcus v. Heralds of Liberty, 241 Pa. 429, 431.

In Jones v. Commonwealth Casualty Co., 255 Pa. 566, 572, cited to us, we did not decide whether or not the Fraternities Accident Order was conducting an insurance business; there, no such point was urged—plaintiff contended merely that, through the casualty company's "taking over" of the contract of the former concern, it became an insurance policy within the Act of 1881. When put at issue, however, "the character of the business transacted must be determined by the [proved] facts, although the presumption is that the business is what the association [in its certificate of membership] declares it to be, but this is prima facie only, and may be overcome by evidence" (Marcus v. Heralds of Liberty, 241 Pa. 429, 433); such being the presumption in the present case, the burden is necessarily upon plaintiff to meet and overcome it.

The trial judge ruled, as a matter of law, that the certificate of membership was a "contract of life insurance," and gave binding instructions on that theory, notwithstanding the presumption to the contrary and the fact that the evidence depended upon to make out plaintiff's case, both in this and other respects, was largely oral, which required the issues involved to be submitted to the jury—particularly the question as to whether or not the Fraternities Accident Order was actually carrying on an insurance business. The course pursued was error, and calls for a new trial; but, in so deciding, we do not intend to intimate an opinion concerning the adequacy of the evidence to prove the Fraternities Accident Order was engaged in conducting an insurance business

—our sole purpose is to afford a fair opportunity to have the case properly developed, and, if sufficient evidence is adduced, submitted to the jury for determination.

When the present corporation defendant assumed the obligations of the Fraternities Accident Order, it "stood in the same position as the beneficial society, succeeded to its rights and privileges......, and became liable only to the same extent as the society was liable." The latter's certificate, now sued upon, remains the contract, or "obligation, of the beneficial society," the casualty company "merely undertaking to carry out its terms"; and, as previously said, the "application for membership and the by-laws of the society" are, prima facie, parts of this contract, to be received in evidence "for the purpose of accurately determining the extent of defendant's liability": Jones v. Commonwealth Casualty Co., 255 Pa. 566, 573-4.

Plaintiff must either obtain, and attach to the contract in suit, copies of the application and by-laws or prove the refusal of defendant to produce them on notice, unless he otherwise legally explains their absence: American Underwriters Association v. George, 97 Pa. 238, 242; Lycoming Fire Ins. Co. v. Storrs, 97 Pa. 354, 360-61; also see Lycoming Mutual Ins. Co. v. Sailer, 67 Pa. 108, 112. Should plaintiff prefer to adopt the last course, and, as she did at the former trial, stand solely by the position that the Fraternities Accident Order conducted an insurance business, if sufficient proof is produced to carry this issue to the jury, it will be the duty of the trial judge to instruct upon the effect of the evidence—as the jury may find the relevant facts to be. That is to say, should the jury find such facts as, under our authorities, constitute the doing of an insurance business, then the absence of the application and by-laws will be excused, and, if the other facts essential to her case are proved, the verdict must follow for plaintiff; on the other hand, should facts sufficient to show the doing of an insurance business be not established to

the satisfaction of the jury, then, since in that event plaintiff will be in the situation of having failed to either produce the entire contract or account for its absence, she cannot recover, and the court must instruct accordingly. Finally, should the proofs on the point under discussion be legally insufficient to justify their submission to the jury, this, for the same reason, will end the case in favor of defendant; but, of course, if the membership application and laws of the order are offered and accepted in evidence, and the casualty company defends thereon, that will put a different aspect upon the case—which, since it has in no sense been developed, we are not at present in a position to discuss.

At the end of the printed notes of testimony, taken at the trial under review, it is stated: "Counsel for defendant say there is no question for the jury and ask binding instructions in favor of defendant"; the court below makes a point of this, but, it is apparent from the context, counsel simply contended the proofs relied on by plaintiff were insufficient to sustain her position—not that, if such contention failed, they admitted the right of the trial judge summarily to withdraw the case from the jury and pass upon the oral evidence, as he did in directing a verdict for plaintiff.

Plaintiff's argument, that the record shows the Fraternities Accident Order to have been engaged in doing a life insurance business—because, if for no other reason, it agreed on a $2,000 death benefit, whereas, under Pennsylvania law, the Order, not being conducted on the lodge system, had no legal authority to contract for the payment of more than $250,—does not impress us. In the first place, we are by no means convinced the law makes any such distinction between beneficial associations using the lodge system and those not so conducted; but, be this as it may, the only evidence which goes to the point under discussion tends to show that, as a matter of fact, the Order in question had local lodges—the

witness Cook, in the course of his testimony, making at least five distinct references to such subordinate bodies.

The judgment is reversed with a venire facias de novo.