Commonwealth ex rel., Appellant, v. Ministers Protective Society.

8

Argued May 21, 1928.   Before MOSCHZISKER, C. J.,
FRAZER, WALLING, SIMPSON, KEPHART, SADLER and
SCHAFFER, JJ.

*Paul C. Wagner,* Deputy Attorney General, with him
*Thomas J. Baldrige,* Attorney General, for appellant.—
Defendant is transacting a general insurance business
beyond the limits prescribed by the Act of May 23, 1891,
P. L. 107: Com. v. Beneficial Assn., 137 Pa. 412; Penna.
State Camp of P. O. of A.'s Application, 261 Pa. 184.

Defendant corporation is not conducting a business not for profit as required by its charter, but is conducting an insurance business for the benefit of its officers and directors: Com. v. Beneficial Assn., 6 Dauphin Co. R. 31.

Defendant corporation is in such condition that its further transaction of business will be hazardous to its members and to the public.

*Frank J. Thomas,* of *Thomas & Thomas,* with him *Sterling G. McNees,* for appellee.—Defendant has not wilfully violated its charter or any law of this Commonwealth: Lithgow v. Knights of Maccabees, 165 Pa. 292; Johnson v. P. R. R., 163 Pa. 127; Beatty v. Supreme Commandery, 154 Pa. 484; Dickson v. A. O. U. W., 159 Pa. 258.

That the business conducted by this society is not an insurance business, but that of a beneficial society, we cite the following: Com. v. Beneficial Assn., 137 Pa. 412; Blair v. American Legion of Honor, 208 Pa. 262; Ogle v. Barron, 247 Pa. 19; Masonic Aid Assn. v. Jones, 154 Pa. 99; Fischer v. American Legion of Honor, 168 Pa. 279.

Appellee is not in such condition that its further transaction of business will be hazardous to its members and to the public: Taylor v. Order of Sparta, 254 Pa. 556; Com. v. Trust Society, 237 Pa. 316.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, June 30, 1928:

The Commonwealth, through the attorney general, asked that defendant corporation be dissolved, the court below refused to so decree and this appeal followed.

In support of the prayer of the petition, it was suggested, (1) that defendant was insolvent, (2) the condition of defendant was such that to allow it to continue in existence would be hazardous to its members, its creditors and the public, (3) that defendant had wil-

fully violated its charter and the laws of the State, particularly the Act of May 23, 1891, P. L. 107; therefore, the relator contended that the corporation should be terminated and its business liquidated under the provisions of section 502 of the Insurance Department Act of May 17, 1921, P. L. 789, 806, which provides, inter alia, that "Whenever any domestic insurance company, including all......societies......which are subject to examination by the insurance commissioner,......(a) is insolvent,......(e) is found, after an examination, to be in such condition that its further transaction of business will be hazardous to its policyholders, or to its creditors, or to the public; or (f) has wilfully violated its charter or any law of the Commonwealth......, the insurance commissioner shall communicate the facts to the attorney general, who shall, after hearing, apply to the Court of Common Pleas of Dauphin County...... for an order directing such......society......to show cause why its business should not be closed and the insurance commissioner should not take possession of its property and conduct its business, and for such other relief as the nature of the case and the interests of its policyholders, creditors,......or the public may require."

It may be well to say, preliminarily: We agree with the court below that defendant is neither an insurance company nor a fraternal association, but must be classified as a beneficial society (see definitions, in Com. v. Equitable Ben. Society, 137 Pa. 412, 419, 420, of insurance companies and beneficial societies, and in section 1 of Act of May 20, 1921, P. L. 916, of fraternal benefit associations or societies) subject to the supervision of the insurance commissioner, under section 29 of the Act of May 20, 1921, P. L. 916; and that section 502 of the Act of May 17, 1921, supra, under which these proceedings were brought, applies so far as the remedy is concerned. Next, since this case depends to a great extent on findings of fact, not excepted to, appellant's contentions rest-

ing in most part on the claim that wrong conclusions were drawn by the court below from its own findings, we shall, in disposing of these contentions, quote at large from the opinion of that tribunal, for it correctly and sufficiently covers the principal points involved.

Negativing the Commonwealth's first suggestion, the court below rightly states: "We have [no statutory] definition of solvency......of a beneficial society. Our Supreme Court, however, has defined it in the case of Taylor v. Order of Sparta, 254 Pa. 556; [there,] quoting from Com. ex rel. v. Tradesman's Trust Co., 237 Pa. 316, it [is] said: 'Insolvency in its legal sense exists when-ever such an institution, from any cause, is unable to pay its debts in the ordinary or usual course of its busi-ness.'......Applying this definition......to the defend-ant corporation, we can not find it to be insolvent. The evidence discloses its obligations are for sickness, acci-dent, burial, death, accidental or natural, and annuities, all of which are authorized by the charter. In the year 1926, for such obligations the corporation paid out $14,-470.71. Its other expenses in the conduct of its business for the year amounted to $56,465.28, making a total ex-penditure of $70,935.99; all of which was met by income during the same period made up of dues, premiums, rents and other miscellaneous receipts, totaling $97,-419.60. At the expiration of the period, the......corpo-ration had a surplus of $93,605.04. The contention of the Commonwealth is that [defendant] is not actuarially solvent,—that is, that the ratio of assets, contingent and otherwise, to contingent and matured liabilities is not at least 100%, but......is very much less. We find no-where in the law relating to beneficial societies such re-quirement of solvency, but on the other hand such re-quirement only as [stated] above. We find from the evidence submitted that the society is able to pay its debts in the ordinary or usual course of its business and, therefore, is not insolvent."

In disposing of the second charge, that defendant corporation was in "such a condition that its further transaction of business [would] be hazardous to its members, to its creditors and to the public," the court below well states: "The corporation has been in existence for a period of about seven years, and up to this time has promptly met all of its financial [liabilities]. The outstanding obligations, as quoted above, are for sickness, accident and death [benefits], and for annuities. The evidence shows that the loss accruing from sickness, disability or death in the ordinary course of business will be met by the dues, premiums and miscellaneous income. As to the annuities, the contract is one that is quite favorable to the......corporation in that no annuity is to be paid unless the member [has been in the organization] for fifteen years and has reached the age of sixty-five, and that in no one year shall more be paid out in annuities than will equal the income from investments plus two per centum of the annuity fund. The evidence discloses that the defendant......has discontinued the Christian Workers Policy [mentioned in the next paragraph of this opinion] and will not in the future conduct any business along that line; if this is adhered to, the scope of [its] liabilities......will be reduced. We can not find that the corporation is in such condition that its further transaction of business will be hazardous to its policy holders, creditors or to the public."

The third reason assigned by the attorney general, that defendant has wilfully violated its charter and the laws of the Commonwealth, also is adequately disposed of in the opinion of the court below. It is there correctly said: "The evidence discloses that defendant was issuing an accident benefit policy known as the Christian Workers Policy, with a maximum liability of $2,200 and a minimum liability of $500. The Commonwealth contends that, in doing this, the corporation was operating as a general accident and health insurance company, and......violating its charter......One of the pur-

poses disclosed by the charter is to provide protection to [the] members [of defendant society] by maintaining funds from dues collected from the members to be used for beneficial and protective purposes in case of the disability of any of them. An examination of the policy in, question discloses that [each] member protected by [it] paid annual dues in the amount of $10.00. We see no violation of the charter......in the corporation issuing this policy; it is not insurance, it does not come within the definition of insurance [as that term is defined in Com. v. Equitable Benef. Assn., 137 Pa. 412], and we think it is specifically provided for in the charter...... The Commonwealth also contends that the defendant corporation is not a beneficial association in which the privileges of membership are restricted to a class. Even if [that fact be true], it is not a violation of the charter. ........[This,] by section 8, provides, amongst other things, that any clergyman or other Christian worker, as may be more fully described in the by-laws,...... may become a member of [the] society upon the payment of a membership fee of three dollars......The by-laws set forth the various persons designated as Christian workers and eligible to become members [and thereby the membership is very considerably restricted]; there is no evidence that there were members other than those designated in the charter and by-laws." We may add that, since defendant's certificates of membership, called policies above, refer to the by-laws of the society, stating that the holder thereof is entitled to the benefits set forth on the back of the certificate and in such by-laws, this makes the latter a part of the contract between the members and the society: Porter v. Com. Casualty Co., 267 Pa. 410, 413.

One other position of the Commonwealth, connected with its third contention, the court below disposed of, rather summarily, as follows: "It is also contended that the defendant has failed to comply with the provisions of the Act of 1891, P. L. 107; [but] the defendant is not

bound so to comply,—the last sentence of this act is that it shall apply only to companies employing agents and doing a general public insurance business. The testimony discloses that [defendant] does not employ agents and that it does not conduct a general public insurance business." The Act of 1891 grants "limited insurance powers" to certain kinds of benefit societies, doing business in a defined way (Com. v. Keystone Benef. Assn., 171 Pa. 465, 472); it provides in effect that "it shall be lawful for any corporation ['employing agents and doing a general insurance business'],—incorporated under ......the ninth paragraph of section two of [the Act of April 29, 1874, which provides for] 'The maintenance of a society for beneficial or protective purposes to its members from funds collected therein,'—to......enter into contracts to pay to each member thereof money or benefits not exceeding ten dollars per week in the event of sickness, accident or disability, or to pay not exceeding the sum of two hundred and fifty dollars in the event of death," the act not to apply, however, to societies operating on the lodge system, or to societies formed for the exclusive benefit of members of religious bodies or for the benefit of certain therein defined classes of employees. The Commonwealth contends (1) that defendant society is within this act and that, thereunder, it cannot lawfully contract to pay more than $250 in the event of death; (2) that, if not within the act, the society has no power to enter into contracts to pay benefits to its members. We agree with the court below that the statute in question does not apply to or control defendant. In Com. v. Keystone Benefit Assn., 171 Pa. 465, 470, 472, we said that the Act of 1891 was fairly construed by the court of first instance; and that tribunal, in its opinion there published, held that the provisions of this statute applied to those beneficial societies only which "offered their benefits through agents to the general public." Here, the court below has found that the present society neither employs agents, within the mean-

ing of the Act of 1891, nor offers its benefits to the general public. As to appellant's claim that, without the aid of the statute under consideration, a society like defendant would lack authority to issue any benefit certificates, appellee correctly contends that the Act of 1874, P. L. 73, under which it was incorporated, as amended by the Act of July 15, 1897, P. L. 283, by paragraph 9 of section 2, gives ample implied authority to that end. We find no direct ruling on the point at issue, but in Porter v. Com. Casualty Co., 267 Pa. 410, 416, this court broadly intimated that benefit societies like the present defendant,—meaning societies not conducted on the lodge system nor offering insurance generally,— were neither deprived by the Act of 1891 of the right to engage themselves to pay more than $250 at the death of a member, nor if they followed that course were they necessarily to be classed as doing a general insurance business, within the meaning of that term as used in the statute; we there said: "Plaintiff's argument, that the record shows the Fraternities Accident Order to have been engaged in doing a life insurance business because, if for no other reason, it agreed on a $2,000 death benefit, whereas, under Pennsylvania law, the order, not being conducted on the lodge system, had no legal authority to contract for the payment of more than $250, does not impress us."

In addition to the above matters, the court below states: "Another contention of the Commonwealth...... is that the issuing of a contract carrying annuity benefits makes it incumbent upon the corporation to provide a fund for the payment of such annuities when they come due," and correctly answers this point thus: "The by-laws [of defendant society stipulate] that the total amount of annuities paid in any one year shall not exceed the income of invested funds......plus two per centum of the annuity fund. The provision [just stated] requires that an annunity fund be set up, [and] this could be done by withdrawal from the surplus; [but]

the failure [so to act], when the means are at hand with which to do it, is not sufficient reason to dissolve the corporation."

Finally, while there is no evidence in the printed record upon which a finding can be based that the Commonwealth has sustained its charge that defendant has "wilfully" violated its charter or the laws of the Commonwealth, yet we agree with the court below that the evidence shows matters of management which should be "discontinued or changed." In this connection, that tribunal very properly comments on "the payment of large annual directors' fees and salaries," and on the general "high cost of conducting the business of the society"; but it significantly adds: "There is a disposition,......disclosed by testimony......of officers of the corporation, to remedy such evils or defects, [which] can......be done by heeding the advice of the insurance commissioner." To this suggestion we add: since all that the court below did was, first to allow and then to discharge a rule to show cause,—the petition upon which the present proceedings rest not having been dismissed,—if defendant fails to heed proper advice from the insurance commissioner, application may again be made, in these proceedings, for an order directing the society to show cause why such further relief as the situation may require should not be had: see section 505 of Act of May 17, 1921, P. L. 789, 807.

On the record now before us, we cannot hold that the court below erred in refusing to make absolute the rule to show cause why defendant corporation should not be dissolved.

The order appealed from is affirmed.