425 A.2d 304

William J. SHEPPARD, Insurance Commissioner of the Commonwealth of Pennsylvania, Appellee,

v.

OLD HERITAGE MUTUAL INSURANCE COMPANY, Appellant.

William J. SHEPPARD, Insurance Commissioner of the Commonwealth of Pennsylvania

v.

OLD HERITAGE MUTUAL INSURANCE COMPANY, Appellant.

Supreme Court of Pennsylvania.

Argued Oct. 18, 1979.

Decided March 20, 1980.

Reargument Denied Feb. 18, 1981.

Malcolm H. Waldron, Jr., Philadelphia, for appellant.

Joseph Kenneth Hegedus, Norman J. Watkins, Harrisburg, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO, LARSEN and FLAHERTY, JJ.

## OPINION

NIX, Justice.

Appellant, Old Heritage Mutual Insurance Company, is an assessable mutual casualty insurance company organized pursuant to the insurance laws of this Commonwealth and licensed by the Insurance Commissioner (Commissioner) to engage in the business of health and accident insurance.

After Old Heritage filed its annual financial statement detailing its financial condition as of December 31, 1975, *see* the Insurance Department Act of 1921, Act of May 17, 1921, P.L. 682, art. III, § 320; *as amended*, 40 P.S. § 443 (1971), it was subjected to a comprehensive examination by the Commissioner pursuant to sections 213, 214 and 216 of the Insurance Department Act, 40 P.S. §§ 51, 52, and 54.[1] This examination revealed that Old Heritage was insolvent by $219,939. Consequently, the Commissioner on June 7, 1976, suspended Old Heritage's right to transact business.[2] This suspension was terminated June 17, 1976, after Old Heritage and the Commissioner entered into a rehabilitation agreement designed to infuse Old Heritage with additional funds in order to avoid involuntary dissolution at that time.

In the spring of 1977, after Old Heritage had filed its annual financial statement detailing its position as of December 31, 1976, it was again subjected to a comprehensive examination by the Commissioner. This examination revealed that as of December 31, 1976, Old Heritage was insolvent by $161,386, was in a hazardous financial condition, had violated the laws of this Commonwealth, and suffered from gross mismanagement. The report of this examination was delivered to Old Heritage on August 3, 1977, and the next day the Commissioner suspended the entire business of Old Heritage based on the examination's finding that the company's condition posed a danger to its 7,500 policyholders, its claimants, its creditors and the public generally. On

1. The purpose of such an examination of an insurance company is to ... thoroughly inspect and examine its affairs to ascertain its financial condition and its ability to fulfill its obligations, whether it has complied with the provisions of law, and any other facts relating to its business methods and management, and the equity of its plans and its dealings with its policyholders.
Insurance Department Act, § 213, 40 P.S. § 51.

2. Section 502 of the Insurance Department Act, 40 P.S. § 202, states: [T]he Insurance Commissioner, after examination, shall suspend the entire business of any such domestic insurance company, ... if it is found by him to be insolvent or in such condition that its further transaction of business will be hazardous to its policyholders or to its creditors or to the public.

August 16, 1977, the Commissioner petitioned the Commonwealth Court for an order to liquidate Old Heritage.

On September 21, 1977, the Commonwealth Court heard Old Heritage's application to supersede or terminate the August 4, 1977 suspension order. At that time Old Heritage's management offered to infuse $161,000 into the company to cure its solvency. This proposed infusion was not in cash, but rather to consist of adjustments in accounts between Old Heritage and affiliated agencies owned or controlled by the management of Old Heritage, and would include long-term payments on pre-existing debts between Old Heritage and these agencies.

The Commonwealth Court denied Old Heritage's application for supersedeas and affirmed the suspension order on October 17, 1977. The court rejected management's offer to infuse $161,000 into the company because, "we are of the opinion that as made, it would not materially enhance the financial condition of" Old Heritage, "and does not meet the minimum requirements as suggested by the Court to possibly accomplish such an objective." The Court also enjoined the company from transacting any business or disposing of its property or records without the written approval of the Commissioner.

This last order was violated by the practice of Old Heritage to continue to bill for and collect renewal premiums from its policyholders and by endorsing these premium checks over to the affiliated agencies owned by the same management. The Commonwealth Court, on February 17, 1978, enjoined these activities as violative of the October 17, 1977 order, and further ordered that "[a]s any and all outstanding policies expire by their own terms, they shall not be renewed or extended." [3] Because Old Heritage issued only policies of one-year terms or less, all of the company's policies expired by February 18, 1979. Consequently, Old

3. Old Heritage appealed the Commonwealth Court's February 17, 1978 order to this Court, Sheppard v. Old Heritage Mutual Ins. Co., No. 82 January Term, (filed February 23, 1978), but withdrew this appeal on March 1, 1979.

Heritage is before this Court as an entity comprised solely of its own management.

On November 28, 1977, trial commenced before a hearing examiner specially appointed by the Commonwealth Court. After 23 days of testimony, the proceeding ended on February 22, 1978. On October 11, 1978, the hearing examiner filed his recommended findings of fact to which both parties filed exceptions. The Commonwealth Court *en banc* heard argument concerning these proposed findings and the exceptions thereto on February 6, 1979. While this case was under consideration by the Commonwealth Court, Old Heritage filed a "Motion for Judicial Notice," seeking to have that court take judicial notice of Old Heritage's 1978 annual financial statement as proof that the company was not insolvent or in a financially hazardous condition.

On September 5, 1979, President Judge Bowman, writing for a unanimous court adopted all of the hearing examiner's recommended findings of fact, dismissed both parties' exceptions thereto, held Old Heritage to be insolvent as of December 31, 1976, by the sum of $159,068, granted the Commissioner's application to liquidate the business of Old Heritage, and appointed the Commissioner liquidator with directions to take possession of Old Heritage's assets. *Sheppard v. Old Heritage Mutual Insurance Co.,* 45 Pa.Cmwlth. 428, 405 A.2d 1325 (1979). The Commonwealth Court did not rule on appellant's motion for judicial notice. The above facts and claims constitute the basis of Old Heritage's appeal at No. 371 January Term, 1979, filed September 6, 1979.

Old Heritage's appeal at No. 380 January Term, 1979, concerns the failure of the Commonwealth Court to grant the company's petition seeking an order from that court to compel the Commissioner to authorize the company to expend funds toward the purchase of postage, and the payment of taxes and the outstanding claims of policyholders. The company contends that the granting of this petition would have demonstrated that Old Heritage was solvent. This petition was filed with the court on July 5, 1979, while the court was considering the disposition of the case. On

September 5, 1979, the same date as its decision ordering the liquidation of Old Heritage, the Commonwealth Court through a separate order by President Judge Bowman denied the company's authorization petition on the basis that, "we have concluded that [Old Heritage] is insolvent as of December 31, 1976, and have directed the Insurance Commission to liquidate" the company. Appellant contends that the Commonwealth Court erred when it denied the petition without a hearing. On September 11, 1979, Old Heritage appealed from the denial of this petition.

Also on September 11, 1979, Old Heritage applied to the Commonwealth Court for a supersedeas of its September 5, 1979 Final Order of Liquidation. The requested supersedeas was denied by the Commonwealth Court on September 20, 1979. Old Heritage applied to the Supreme Court for supersedeas of the liquidation order on September 24, 1979. On September 26, 1979, we granted Old Heritage a stay of liquidation and advanced oral argument to our October Session. We have jurisdiction over these appeals pursuant to 42 Pa.C.S.A. § 723(a) (1979 Pamphlet).

For the reasons that follow, we agree with the decisions reached by the Commonwealth Court and, therefore, affirm the orders of that court docketed at Nos. 371 and 380 January Term, 1979.

### 1. No. 371 January Term, 1979

■ Old Heritage's first contention is that the Commonwealth Court failed to employ the correct legal test of insolvency in determining the company's financial condition. Prior to the December 1977 amendments to the Insurance Department Act of 1921, there was no statutory definition of insolvency. Under these circumstances, this Court created its own definition of insolvency. *See, e. g., Commonwealth v. Minister's Protective Society*, 294 Pa. 6, 11, 143 A. 232 (1928). In the Act of December 14, 1977, P.L. 280, No. 92, §§ 1 *et seq.*, 40 P.S. §§ 221.1 *et seq.* (Supp.1979–80), the legislature defined insolvency, § 2, 40 P.S. § 221.3, and made it and the other provisions of the act retroactive in effect.

§ 2, 40 P.S. § 221.9. Accordingly, the Commonwealth Court correctly employed the statutory definition rather than our prior judicial definitions of insolvency. Appellant contends that the Commonwealth Court employed the wrong portion of this new statutory definition in gauging the company's solvency. This definition is set forth below. The Commonwealth Court and the Commissioner employed that portion of the definition italicized, while Old Heritage contends that the correct test is indicated by the portion underlined:

§ 221.3  Definitions.

\*  \*  \*  \*  \*  \*

"Insolvency" means:

\*  \*  \*  \*  \*  \*

(2) For any other insurer [i. e., one not issuing only assessable fire insurance policies], *the inability to pay its obligations when they are due, or whose admitted assets do not exceed its liabilities* plus the greater of (i) any capital and surplus required by law for its organization or (ii) its authorized and issued capital stock. <u>For any insurer licensed to do business in the Commonwealth as of the effective date of act which does not meet this standard, the term "insolvency" shall mean for a period not to exceed three years from the effective date of this act that is unable to pay its obligations when they are due or that its admitted assets do not exceed its liabilities</u> plus any required capital contributions ordered by the commissioner under provisions of the insurance law. Act of December 14, 1977, supra, § 2, 40 P.S. § 221.3 (emphasis added).

■ The crucial difference is that under the second sentence of this definition—i. e., that relied upon by Old Heritage—the Commissioner would be forced to wait until the target company had been insolvent for three years before it could seek the dissolution and liquidation of that company. The Commonwealth Court did not address this controversy. We believe that the interpretation of this section set forth in the Commissioner's brief to this Court correctly construes the legislature's intent:

. . . Old Heritage argues that Section 503's definition of "insolvency" allows the company three years in which to make itself solvent. Thus, according to this specious logic, it is impossible for any insurance company to be found insolvent for the three years following the effective date (December 14, 1977) of the statute. In view of the General Assembly's stated purpose for enactment of Article V for "the protection of the interests of insureds, creditors, and the public generally," it is inconceivable that the legislature of this Commonwealth intended some hiatus in application of the definition of "insolvency" so as to leave the public unprotected from insolvent insurance companies for three years.

The proper construction of the definition may be summarized as follows: The general definition of "insolvency" is that admitted assets do not exceed liabilities *plus* surplus required for Old Heritage's organization. Every insurance company, stock or mutual, is required to have a minimum amount of surplus (and capital if a stock company) for its organization. The minimum depends on the line(s) of insurance the company is authorized to write, as specified in Section 206 of The Insurance Company Law of 1921, *supra*, 40 P.S. § 386. If this general definition of "insolvency" were to be applied to Old Heritage today, it would be required to have $50,000, 40 P.S. § 386(e)(3) (proviso), above the mere "break-even" point indicated on its own optimistic balance sheet, Brief for Appellant at 7.

For purposes of the instant action, however, during the three-year grace period, Old Heritage is insolvent if its admitted assets do not exceed its liabilities. It is this simple balance sheet test which Commonwealth Court applied and which Section 503 clearly requires. Brief for Appellee, at 15–16 (footnotes omitted, emphasis in the original).

Our belief that the Commissioner has correctly interpreted the will of the legislature is based upon a consideration of the mischief sought to be remedied, the goal sought to be attained, and the consequences of an interpretation that

would, as appellant suggests, allow an insolvent insurance company to continue in business for three years before remedial measures could be taken against it. *See* Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1921(c) (1979 Pamphlet). We are also mindful that the legislature has mandated that administrative interpretations of a statute are to be considered in ascertaining the intention of the legislature. *Id.*, § 1921(c)(8). Furthermore, there is a strong presumption that the legislature did not intend a result that is absurd or unreasonable, and that the public interest is to be favored as against any private interest. *Id.*, §§ 1922(1) & (5). Lastly, we are ordered by the legislature to give the present statute a liberal construction. *Id.*, § 1928(c).

Having concluded that we must determine appellant's solvency through a comparison of the company's admitted assets and its liabilities, we agree with the Commissioner and the Commonwealth Court that Old Heritage was insolvent as of December 31, 1976. For purposes of comparison and explication, we have set forth below four versions of appellant's 1976 balance sheet. The first reflects the findings of the Commonwealth Court, the second states the position of the Commissioner, the third contains the sums set forth in the annual financial statement filed by Old Heritage and relied upon by it in the Commonwealth Court, and the fourth is the balance sheet offered by Old Heritage in its brief to this Court.

| As of Dec. 31, 1976 | Commonwealth Court | Insurance Commissioner | Old Heritage's Financial Statement | Old Heritage's Present Brief |
|---|---|---|---|---|
| ASSETS | | | | |
| Cash | $ 12,597 | 12,597 | 12,597 | 12,597 |
| Bonds | 133,468 | 133,468 | 146,123 | 133,468 |
| Collateral loans | 95,569 | 95,569 | 105,000 | 95,569 |
| Agents' balances & Uncollected Premiums | 30,060 | 2,946 | 95,930 | 30,060 |
| Interest Due | 1,327 | 1,327 | ˜3,952 | 1,327 |
| TOTAL | $273,021 | $245,907 | $363,602 | $273,021 |

| As of Dec. 31, 1976 | Commonwealth Court | Insurance Commissioner | Old Heritage's Financial Statement | Old Heritage's Present Brief |
|---|---|---|---|---|
| **LIABILITIES** | | | | |
| Loss Reserve | 79,378 | 79,378 | 30,365 | 79,378 |
| Loss Adjustmt. Exp. | 10,849 | 10,849 | 3,036 | 10,849 |
| Unearned Premium Reserve | 279,576 | 254,435 | 279,576 | 120,508* |
| Other Expenses | 21,488 | 21,488 | 8,945 | 21,488 |
| Taxes, Licenses, etc. | 38,265 | 38,265 | 38,265 | 38,265 |
| Withheld for Accts. of Others | 2,533 | 2,533 | 2,533 | 2,533 |
| TOTAL | $432,089 | $407,148 | $362,720 | $273,021 |
| POLICYHOLDERS' SURPLUS | (159,068) | (161,241) | 882 | -0- |

*Deficient $159,068

◼ The balance sheet now offered to this Court by Old Heritage clearly indicates that appellant has adopted every aspect of the valuation and balance sheet determined by the Commonwealth Court with the exception of the unearned premium reserve. By abandoning its objections to the Commonwealth Court's determinations, Old Heritage has waived these objections. It is clear that the failure to pursue an issue on appeal is just as effective a waiver as is the failure to initially raise the issue. *Kimmel v. Somerset County Commissioners*, 460 Pa. 381, 384–85, 333 A.2d 777, 779 (1975); *Commonwealth v. Piper*, 458 Pa. 307, 310 n.5, 328 A.2d 845, 847 n.5 (1974).

◼ Old Heritage presently claims that its insolvency is merely a deficiency in its unearned premium reserve.[4] Old Heritage is required by statute to maintain its unearned premium reserve as a liability.[5] As a comparison of the four

4. This Court has had occasion to define "unearned premium reserve:" "When an insurer collects a premium on a policy before its expiration, part of the premium is unearned, i. e., the part collected for that period of time that has not elapsed. If a policy is cancelled before expiration, the insurer must refund the unearned premium. The purpose of an unearned premium reserve is to guarantee that money will be available for any such required refund. The Insurance Department Act requires the maintenance of such a reserve, 40 P.S. § 91 ...." *Commonwealth Insurance Department v. Safeguard Mutual Insurance Co.*, 478 Pa. 592, 598–99, 387 A.2d 647, 650 (1978).

5. *See* Insurance Department Act of 1921, § 310, 40 P.S. § 91 (computation of unearned premium reserve liability); Insurance Company Law of 1921, Act of May 17, 1921. P.L. 682, art. VIII, § 807, *as amended*, 40 P.S. § 917 (Supp.1979–80); note 4, *supra*. In defining "insolvency" the legislature has stated that:

For the purposes of this article, *"liabilities" shall include* but not be limited to *reserves required by statute* or by insurance depart-

balance sheets indicate, prior to this appeal Old Heritage claimed that its unearned premium reserve liability totalled $279,576 and that the company had sufficient assets with which to balance this liability. Now Old Heritage seeks to cure its insolvency by claiming that the company is solvent but deficient in funding its unearned premium reserve. This is a bookkeeping device of doubtful validity [6] and must fail for two reasons.

First, the issue of a deficiency in the unearned policy reserve has been waived by Old Heritage's failure to raise this issue in the Commonwealth Court. Pa.R.A.P. 302(a) (1979 Pamphlet). *See, Bell v. Koppers Co., Inc.*, 481 Pa. 454, 459, 392 A.2d 1380, 1383 (1979); *Ross v. Vereb*, 481 Pa. 446, 454, 392 A.2d 1376, 1380 (1979); *Commonwealth v. Tripplett*, 476 Pa. 83, 90, 381 A.2d 877, 881 (1977); *Commonwealth v. Presbury*, 475 Pa. 48, 49, 379 A.2d 569 (1977). Second, as the Commonwealth Court noted, "there is no evidence that Old Heritage is deficient in its unearned premium reserve." 45 Pa.Cmwlth. at 448 n.15, 405 A.2d at 1336 n.15. Accordingly, because Old Heritage has adopted the balance sheet as determined by the Commonwealth Court and thereby failed to preserve any objections to that statement of account, and because Old Heritage has failed to litigate in the Commonwealth Court the issue of a deficit in the unearned premium

ment general regulations or specific requirements imposed by the commissioner upon a subject company at the time of admission or subsequent thereto, and any other capital and surplus requirements. Insurance Department Act of 1921 *as amended*, 40 P.S. § 221.3 (emphasis added).

Since the legislature has required the unearned premium reserve to be listed as a liability on the balance sheet, we must reject Old Heritage's argument that this reserve should be excluded from the computation of its liabilities.

**6.** Even if Old Heritage was deficient in its unearned premium reserve, it would still be required to have assets that equal or exceed that deficiency. In the balance sheet presented by Old Heritage to this Court, the company admits that it has insufficient assets to cover the alleged $159,068 "deficiency" in the unearned premium reserve. By its own admission, therefore, Old Heritage is insolvent.

reserve, we find Old Heritage to have been insolvent in the amount of $159,068 as of December 31, 1976.[7]

Old Heritage contends that if it was insolvent as of December 31, 1976, the company had become solvent as of December 31, 1978, as indicated by the annual financial statement filed by the company for calendar year 1978. After the Commonwealth Court had heard arguments in this case and had closed the record, Old Heritage sought to have that court take judicial notice of its 1978 annual financial statement. In its brief to this Court, Old Heritage's sole explanation for such action is that "the company's annual statement, filed with the Insurance Commissioner, is a public document, [and] the lower court should have taken judicial notice of" it.

The Commonwealth Court was correct not to take judicial notice of the annual financial statement filed by Old Heritage for calendar year 1978. As we stated in *Albert Appeal*, 372 Pa. 13, 20, 92 A.2d 663, 666 (1952):

The doctrine of judicial notice is intended to avoid the necessity for the formal introduction of evidence in certain cases when there is no real need for it,—where a fact is so well established as to be a matter of common knowledge.

*Accord, Commonwealth ex rel. Duff v. Kennan*, 347 Pa. 574, 582–83, 33 A.2d 244 (1943) ("What is so well known as to be incontestable need not be proved formally"). Not only were

7. In view of our decision that Old Heritage has waived a consideration of whether it was deficient in funding its unearned premium reserve, we need not reach appellant's contention that § 808 of the Insurance Company Law of 1921, 40 P.S. § 918, applies to the present case. By its terms, § 808 applies only to those mutual insurance companies "which shall be deficient in providing the unearned premium reserve required" by law. Old Heritage is precluded from asserting this section by the company's failure to provide a proper foundation for the argument that it is deficient in its unearned premium reserve. For this reason we are not able to consider Old Heritage's contention that it is relieved of its liability for unearned premium reserve because the Commissioner, in the proper exercise of his statutory discretion, failed to approve Old Heritage's request to assess its policyholders in order to correct the alleged "deficiency" in unearned premium reserve.

the contents of Old Heritage's 1978 annual financial statement not a "matter of common knowledge," the validity of those sums were hotly contested by the Commissioner. In this circumstance, the court properly refused to take judicial notice of the contents of Old Heritage's 1978 financial statement.

Old Heritage's last contention is that, should it be found to be insolvent, it should be given the opportunity to rehabilitate itself. The Commonwealth Court thought that Old Heritage should not and could not be rehabilitated. It based its decision upon the failure of Old Heritage to comply with the June, 1976 rehabilitation agreement, the fact that the same officers whose mismanagement caused the company's problems were still controlling the company, and that "the prospects for rehabilitation of Old Heritage should be judged in light of prior rehabilitation efforts. The insolvency of Old Heritage for the year 1976 is not an aberration blemishing an otherwise healthy financial picture. The Department's 1975 report of financial examination revealed insolvency for that year also and was the basis for the Company's suspension in June, 1976." 45 Pa.Cmwlth. at 449–450, 405 A.2d at 1337.

It is clear that Old Heritage has the burden of showing that rehabilitation is feasible. *Penna. Ins. Dept. v. Safeguard Mutual Ins. Co.,* 18 Pa.Cmwlth. 195, 202, 336 A.2d 674, 680 (1975). Old Heritage's sole claim for rehabilitation rests upon the apparent offer by Old Heritage, through its officers, to make a contribution to the company of $162,000, or $1,000 greater than the amount the Commissioner believed Old Heritage to be insolvent. The hearing examiner's finding on this point states:

178. On August 23, 1977, GLI [the exclusive general insurance agency of Old Heritage and owned by the officers of Old Heritage] forwarded to Department a letter signed by Herbert L. Neff [Secretary of GLI *and* President of Old Heritage] stating that it intended to advance $162,000 to Old Heritage on August 31, 1977 by means of an 809 certificate; on said date Old Heritage

forwarded to Department a similar letter, stating it would receive $162,000.[8]

179. During 1977, $162,000 was not advanced to Old Heritage by GLI or by any other individual or entity, by means of 809 certificate or in any other manner.

180. Herbert L. Neff has not established any trust or escrow account in any bank for the purpose of retaining monies to contribute to Old Heritage.

181. The offer to infuse Old Heritage with $162,000 remains outstanding.

The short answer to Old Heritage's contention is that Old Heritage has absolutely failed to take any steps that would bring this offer of new cash into fruition. More than two years have passed since this offer was made. Although such a cash contribution is not prohibited either by statute, Insurance Department regulations or orders, or by any of the orders of the lower court, no steps were ever undertaken to put some substance into this otherwise empty offer of financial assistance. Nor has the management of Old Heritage explained the failure to finalize and accept this offer. Consequently, the Commonwealth Court did not err in rejecting this claim of rehabilitation.

In addition to the empty shell of this offer to infuse new capital into Old Heritage, the business and management practices of the company also support the conclusion that Old Heritage could not and should not be rehabilitated.

The findings of fact made by the hearing examiner and adopted by the Commonwealth Court show considerable mismanagement of the company to the serious detriment of its policyholders. The hearing examiner found that out of every premium dollar collected from Old Heritage's policyholders, 70.7 cents were paid as expenses, much of which went to affiliated agencies owned by the same family that

8. An "809 certificate" is a loan made to a mutual insurance company by a director, officer, or other member of that company pursuant to the Insurance Company Law of 1921, § 809, 40 P.S. § 919. Insurance Department regulations implementing § 809 require only notice to the Commissioner prior to the contribution. *See* 31 Pa.Code Ch. 105.

manages Old Heritage. The hearing examiner also found that other comparable companies paid only 31.3 cents for the same expenses. The hearing examiner further found that Old Heritage pays 47.5 cents per premium dollar for agents' commissions while comparable companies pay only 14.0 cents for such commissions. And according to Old Heritage's 1976 financial statement, it paid more than three times as much for expenses such as salaries and commissions, as it did for the claims of its policyholders.

Corporate mismanagement also surfaces in the recurring failure of Old Heritage to accurately estimate its liability for losses and the company's perennial gross understatement of its loss reserve. The Insurance Department Act of 1921 requires Old Heritage to establish a loss reserve out of which claims are paid to policyholders. § 311, 40 P.S. § 92. The Commonwealth Court vividly described this

> ... patterned inability of the Company accurately to estimate its reserve liability. The hearing examiner found that for losses incurred as of December 31, 1974, the Company reserved $15,115, but, subsequently, actually paid out $73,834 for those same losses. For 1975, the Company reserved $51,043 but it actually paid out $72,675 for those losses. For the year in question here, 1976, Old Heritage eventually paid out $101.081 for the losses for which it had reserved $30,365. The hearing examiner further found that the Company had been advised on six occasions by the Department between July, 1973 and August, 1977 that its loss reserves "had been deemed inadequate." 45 Pa.Cmwlth. at 447, 405 A.2d at 1335.

The danger presented by this recurring practice is that it allows the company to be seriously under capitalized while giving the superficial appearance of solvency. In both 1975 and 1976, for example, the amount by which Old Heritage understated its loss reserves greatly exceeded the company's policyholders surplus, i. e., the amount by which it is solvent. In 1975, Old Heritage claimed a policyholders' surplus of $465, but its losses exceeded the amount reserved by $21,632,

thereby giving the company a deficit of $21,167. In 1976, the actual losses exceeded the reserve by $71,716, far exceeding the $882 in policyholders' surplus claimed by the company.

The hearing examiner also found that Old Heritage repeatedly violated eight categories of business practices prescribed by the Unfair Insurance Practices Act of 1974, Act of July 22, 1974, P.L. 589, No. 205; *as amended*, 40 P.S. §§ 1171.1–.15 (Supp.1979–80). The hearing examiner found that Old Heritage "misrepresented pertinent facts or policy provisions relating to coverage," *see* § 5(a)(10)(i), 40 P.S. § 1171.5(a)(10)(i); "failed to acknowledge and act promptly upon written or oral communications with respect to the claims arising under insureds' policies," *see* § 5(a)(10)(ii), 40 P.S. § 1171.5(a)(10)(ii); "failed to affirm or deny coverage of claims within a reasonable time after proof of loss statements had been completed and communicated to it,"[9] *see* § 5(a)(10)(v), 40 P.S. § 1171.5(a)(10)(v); "paid less than its full liability," *see* §§ 5(a)(10)(iv), (vi) & (viii), 40 P.S. §§ 1171.5(a)(10)(iv), (vi) & (viii); "denied claims on the ground of pre-existing conditions where the insured had incontestable policies," *see* §§ 5(a)(10)(i), (iii), (iv) & (vi), 40 P.S. §§ 1171.5(a)(10)(i), (iii), (iv) & (vi); "failed to provide reasonable explanation of the basis in the insurance policies in relation to the facts or applicable law for denial of claims or for offers of compromise settlements," *see* § 5(a)(10)(xiv), 40 P.S. § 1171.5(a)(10)(xiv); "failed to fully explain benefits paid on claims," *see* § 5(a)(10)(x), 40 P.S. § 1171.5(a)(10)(x); "denied claims based on lack of responses from insureds' doctors or hospitals" without in any way investigating those claims, *see* §§ 5(a)(10)(iii), (iv) & (vi), 40 P.S. §§ 1171.-5(a)(10)(iii), (iv) & (vi); and improperly denied claims for supposedly violating the notice provision of the policy, *see* §§ 5(a)(10)(iv), (viii) & (ix), 40 P.S. §§ 1171.5(a)(10)(iv), (viii) & (ix).

**9.** The hearing examiner found that while industry practice is to pay or deny the claim within ten working days or within thirty days if further investigation is needed, Old Heritage routinely delayed for months, even in simple cases.

■ In light of the history of insolvency posted by Old Heritage, the gross mismanagement of its affairs, and its illegal business practices, the Commonwealth Court did not err in finding that Old Heritage could not be rehabilitated.

The appeal at No. 371 January Term, 1979 is affirmed.

## 2. No. 380 January Term, 1979

The sole question raised in this appeal is whether the Commonwealth Court erred in denying without a hearing a petition by Old Heritage to pay all of its claims and related expenses. Old Heritage claims that the payment of these claims and expenses would have unequivocally demonstrated that it was solvent. As recounted earlier, this petition was filed in the Commonwealth Court on July 5, 1979, while that court was considering the disposition of this case. The court denied the petition by order dated September 5, 1979, on the basis of its holding that Old Heritage was insolvent.

In its petition, Old Heritage claimed that the total amount of its policyholders' claims would not exceed $167,929.34, plus postage, stationery, etc. The Commissioner, in his answer to the petition, disputed this sum, contending that former policyholders may have claims against Old Heritage or that some policyholders had claims against the company for unlawfully denying coverage. Old Heritage claimed that its annual financial statement for 1978 showed liquid assets of $300,659.08, while the Commissioner contended that the value of these same assets was only $134,539. According to Old Heritage, after payment of its policyholders' claims, the company would retain a surplus of $133,719.74, while the Commissioner asserted that the assets of Old Heritage were insufficient by $33,390.54 to fully pay even the understated claims advanced by Old Heritage.

■ We do not believe that the Commonwealth Court erred in denying the petition of Old Heritage. The facts and figures employed by Old Heritage in attempting to show its solvency and its ability to pay the claims of its policyholders, were derived from its annual financial state-

ment for 1978. As discussed above, the Commonwealth Court rejected the attempt by Old Heritage to have that court take judicial notice of the contents of that statement and declare the company solvent on the basis of that statement. Just as it would have been improper for the court to take judicial notice of the contents of the statement and act according to those figures in determining solvency, it would have been equally improper for the court to authorize the payment of claims based upon the hotly contested figures alleged in the statement. This is especially true in the present case where the annual financial statements filed by Old Heritage have rarely reflected the realities of the company's financial condition.

In addition, even if we were to assume *arguendo*, that Old Heritage could demonstrate solvency through this attempted procedure, our decision that the company should be liquidated would not change. The Insurance Department Act of 1921 provides that an insurance company's violation of the insurance laws "in a manner which may result or has resulted in substantial harm... to the interests of its policy or certificate holders" constitutes an independent ground for the dissolution of the company. *See* 40 P.S. §§ 221.14(9) & 221.19. As we have already held that Old Heritage committed serious violations of the Unfair Insurance Practices Act to the substantial detriment of its policyholders, we would consider any error by the Commonwealth Court in denying Old Heritage's petition to have been harmless.

The appeal at No. 380 January Term, 1979 is affirmed.

The orders of the Commonwealth Court are affirmed. The stay of the liquidation is vacated.

MANDERINO, J., did not participate in the decision of this case.

LARSEN, J., concurred in the result.