# In re Ambassador Insurance Co., Inc., Ambassador Group

[515 A.2d 1074]

No. 85-145

Present: **Allen, C.J., Hill, Peck, Gibson and Hayes, JJ.**

Opinion Filed August 22, 1986

*Gretchen Babcock*, Special Assistant Attorney General, Department of Banking and Insurance, Montpelier; *John L. Strauch, Richard B. Whitney*, and *Robert C. Kahel* of *Jones, Day, Reavis & Pogue*, Cleveland, Ohio; and *Dick, Hackel & Hull*, Rutland, for Plaintiff-Appellee.

*Sheehey, Brue & Gray*, Burlington, and *James W. Rayhill* of *Carter, Ledyard & Milburn*, New York, New York, for Defendant-Appellant.

**Peck, J.** Ambassador Insurance Company, Inc. (Ambassador) and Ambassador Group, Inc. (Group)[1] appeal a decision and judg-

---

[1] Group is the owner of the capital stock of Ambassador.

ment order of the Washington Superior Court directing the Vermont Commissioner of Banking and Insurance (Commissioner) to liquidate Ambassador, a Vermont-domiciled property and casualty insurance company. We affirm.

On November 9, 1983, the Commissioner filed a complaint in superior court seeking an injunction against the further transaction of business by Ambassador pursuant to 8 V.S.A. § 3599. On the same day, the Commissioner and Ambassador entered into a stipulated order that the company was in hazardous financial condition. The superior court appointed the Commissioner as receiver and directed him to submit a plan for rehabilitation of the company within 180 days if he believed that rehabilitation would be possible or, if he considered it necessary, to apply for an order of liquidation.

The Commissioner assembled a receivership team of consultants to closely investigate Ambassador's condition. They discovered a company in a chaotic state. Ambassador had over 18,000 unbooked premium transactions and policy cancellations; its liability reserve was grossly underfunded; and, its principal reinsurer had cancelled reinsurance coverage. When the receivership team prepared a balance sheet detailing the company's assets and liabilities, it found that Ambassador's insolvency was between $43 million and $63 million, depending upon different projections of loss liabilities. These figures were based upon statutory accounting principles.[2] The receivership consultants also prepared a balance sheet using a less conservative method known as liquidated value accounting principles.[3] This method indicated that Ambassador's insolvency was about $25 million as of November 30, 1983 and had actually increased to $42.5 million by spring of 1984. The Commissioner considered rehabilitation plans but decided that

---

[2] "Statutory accounting principles ('SAP') are rules that state insurance departments have developed to regulate . . . insurance companies; SAP mandate that conservative methods be employed in valuing the assets of such companies to guarantee their continuing solvency. . . . This routine conservatism as reflected through use of SAP requires only that certain types of assets be considered in calculating a company's financial condition, and that the value of such 'admitted' assets be determined according to quite restrictive rules." *Meyers* v. *Moody*, 693 F.2d 1196, 1218 (5th Cir. 1982) (citations omitted).

[3] Liquidation value accounting includes all assets of the company and compares the present value of these assets with the present value of the company's liabilities. In contrast, statutory accounting does not reduce the company's losses to present value.

rehabilitation was impossible due to the massive insolvency and the unavailability of new capital to reduce it. On March 30, 1984, the Commissioner filed an application for Ambassador's liquidation. After a lengthy trial the superior court found that Ambassador was insolvent and could not be rehabilitated. The court ordered liquidation.

Appellants raise several issues on appeal. First, they argue that the superior court erred because the wording of its order implied that it interpreted 8 V.S.A. § 3603 to *require* liquidation upon a finding of statutory insolvency. Ambassador argues that such an interpretation is erroneous in that § 3603 does not deprive the court of the discretion to order rehabilitation of an insolvent company. The court's order does not explicitly interpret § 3603 in this manner, but Ambassador points to two sentences in the court's conclusions to support its view: "Ambassador is insolvent in the amount of $45,604,122. as of March 31, 1984. Ambassador must be liquidated. 8 V.S.A. § 3603." Reading these two sentences in the context of the court's findings of fact, however, lends a different interpretation. In its findings, the court determined that there was no reasonable likelihood that Ambassador would be sold; that Ambassador's insolvency had not decreased during the six months preceding trial; and that Ambassador is not a company that could or should be rehabilitated. In addition, the court considered the rehabilitation plan submitted by Group which proposed that Ambassador would continue under the receivership of the Commissioner, but that its loss reserve liabilities could be adjusted under a certain plan. The court specifically considered this plan and rejected it as unreliable, unpersuasive, and contrary to statutory accounting principles.

■ In light of these findings, we think the court correctly applied § 3603, which provides that "[w]ithin 120 days of a final determination of insolvency of an insurance company by a court of competent jurisdiction, and before final distribution of assets is ordered the receiver shall make application to the court for approval of a proposal to disburse the company's marshalled assets . . . ." We interpret "final determination of insolvency" to mean the court's final decision that the company still was insolvent and could not be rehabilitated, and therefore liquidation was necessary. We find that the broad discretion given to the trial court in

8 V.S.A. § 3600[4] combined with § 3603 allows the court to consider whether the rehabilitation of an insolvent company is possible and to order liquidation if it determines that rehabilitation is not feasible. See, e.g., *Alias Smith & Jones, Inc.* v. *Barnes,* 695 P.2d 302, 305 (Colo. 1984); *Sheppard* v. *Old Heritage Mutual Insurance Co.,* 45 Pa. Commw. 428, 405 A.2d 1325, 1336-37 (1979), *aff'd,* 492 Pa. 581, 425 A.2d 304 (1980). The court in this case correctly exercised this discretion. Because we determine that the trial court did not erroneously interpret § 3603, as appellants argue, we need not address their other arguments on this issue.

Ambassador and Group's second argument is that the court failed to consider liquidation value accounting principles and evidence relating to the rehabilitation of statutorily insolvent insurance companies in other states in determining whether to order rehabilitation or liquidation. Specifically, they challenge the court's ruling during trial that statutory accounting principles applied to determine the financial condition of Ambassador. This ruling, they contend, foreclosed any consideration of other bases for the court's decision whether to order rehabilitation or liquidation of Ambassador.

Vermont law requires insurance companies doing business in Vermont to file an annual report which "shall be in such general form . . . as currently in general and customary use in the United States . . . ." 8 V.S.A. § 3561. This form is prepared by the National Association of Insurance Commissioners and it follows statutory accounting principles. We think it is appropriate and consistent with Vermont law for the court to evaluate the solvency of an insurance company under the same accounting principles that the company must use to report its financial condition to the Commissioner. We think the statute here is "designed to assure the people of this state in the first instance that their insurance companies shall be, and remain, not only solvent, but liquid . . . ." *Adams* v. *Michigan Surety Co.,* 364 Mich. 299, 338, 110 N.W.2d 677, 697 (1961) (footnote omitted). "[I]t is clear that the standard practice in the . . . insurance industry is to determine the solvency of insurance companies by reference to

---

[4] Section 3600 allows the trial court, upon the commissioner's application for an injunction against an insolvent insurer, to issue the injunction or "in its discretion, allow it to continue business in conformity with law, subject to such orders, conditions and restrictions as the evidence in the case, the situation of the parties and the interests involved require."

SAP [statutory accounting principles], even though, under generally accepted accounting principles . . . assets may be shown to have substantially greater value and might show a net equity of the company." *Meyers* v. *Moody,* 693 F.2d 1196, 1218 (5th Cir. 1982) (citing *In re American Investors Assurance Co.,* 521 P.2d 560, 562 (Utah 1974); 19A J. Appleman, Insurance Law and Practice § 10641, at 42 (1982)).

Appellants also argue that liquidation value principles reflect the company's financial picture on a present value basis, and therefore are appropriate for consideration not only of a company's solvency, but also of its prospects for rehabilitation. They contend that the superior court order should be reversed because it relied exclusively on statutory accounting principles to determine whether Ambassador could be rehabilitated. We disagree. In evaluating the potential for a company's rehabilitation, what is crucial is whether the company can be restored to statutory solvency. The court's ruling did not foreclose the appellants from introducing their rehabilitation plan. Despite the court's finding that Ambassador was over $45 million statutorily insolvent (which appellants do not challenge on appeal), their rehabilitation plan was not based upon the addition of new capital or assets or a subsequent change in condition which could resurrect the company. See *Sheppard, supra,* 492 Pa. at 594-95, 425 A.2d at 310-11. Appellant's plan was grounded in a discounting of losses and loss adjustments. Using this plan, appellant's expert, Kenneth Savage, testified that there could be a significant reduction in both losses and loss adjustment expenses. As noted above, the trial court concluded that this plan was not only contrary to statutory accounting principles, but also unreliable based on several of its findings. Appellants do not challenge these findings but argue that the conclusion of unreliability is "suspect" because the court's ruling on statutory accounting principles deprived it of "real world economic realities." We do not agree. The court properly used SAP to evaluate Ambassador's solvency and potential for rehabilitation.

Appellants also contend that they were almost entirely foreclosed from presenting evidence regarding regulatory precedents for the rehabilitation of statutorily insolvent insurers in other states. They cite no law to support their claim, but only state that the court "closed itself off in an artificial decision-making environment." This argument is without merit. The court did admit

some testimony relating to rehabilitation of a statutorily insolvent insurance company in another state, but excluded other evidence as cumulative, collateral, or irrelevant. See V.R.E. 402, 403. We find no error in the court's evidentiary rulings.

*Affirmed.*