360 A.2d 696
Thomas W. FREDERICKS, Appellant at No. 1550,

v.

Charles CASTORA, Jr., et al.

v.

Donald TERWILLIGER, Appellant at No. 1455,

and

Pennsylvania Turnpike Commission,
Additional Defendants.

Superior Court of Pennsylvania.
June 28, 1976.

212

Terry W. Knox, West Chester, for Donald Terwilliger.

Donald J. Farage, Philadelphia, for Thomas W. Fredericks.

John R. Warner, Norristown, for appellee Tube City Iron and Metal Co.

G. Clinton Fogwell, Jr., West Chester, Charles Jay Bogdanoff, J. Lieberman, Philadelphia, for appellees Melvin R. Whiteacre, J. M. Rudisill and Son, Inc.

PER CURIAM:

This appeal is brought by the plaintiff and the one defendant found liable in an action arising from a motor vehicle accident involving two trucks and a Pennsylvania Turnpike Commission vehicle. We disagree with the appellants' various allegations of trial errors and affirm the lower court.

The appellant-plaintiff, Thomas Fredericks, was a passenger in a Pennsylvania Turnpike Commission vehicle driven by appellant-defendant Donald Terwilliger on the morning of January 24, 1968. Just prior to the accident, Terwilliger pulled onto the berm of the four lane turnpike preparatory to making a U-turn through an opening in the divider fence. As the vehicle proceeded to cross the two eastbound lanes, it was struck by a truck driven by appellee-defendant Charles Castora and owned by Tube City Iron and Metal Company which had been following at a distance of about 600 to 800 feet. Another truck, driven by appellee-defendant Whiteacre in the scope of his employment with J. M. Rudisill and Son, Inc., in an attempt to pass the wreckage, jack-knifed. It is disputed whether or not the second truck struck any of the other vehicles. Fredericks was seriously injured. Thomas Fredericks brought suit against the two truck drivers, Castora and Whiteacre and their two respective employers, Tube City Iron and Metal Company and J. M. Rudisill and Son, Inc. Subsequently, Donald Terwilliger

and the Pennsylvania Turnpike Commission were joined as additional defendants. Following a jury trial a verdict was rendered in favor of the plaintiff Fredericks against the additional defendant Donald Terwilliger, and in favor of Charles Castora, Tube City Iron and Metal Company, Melvin Whiteacre and J. M. Rudisill and Son, Inc.

■  Appellants' first argument is that the defendants Castora and Whiteacre should be held to a higher standard of care than is usually applied to the operator of a motor vehicle in evaluating both their negligence and the defense of sudden emergency as charged by the trial judge. In support of this position, reference is made to the evidence that both defendants were professionals who drove trucks for a living and had done so for over 20 years. Appellants cite no cases to buttress this novel contention but instead review various sections and comments from the Restatement (Second) of Torts (1965).[1] Whereas the sections cited might be appropriately considered in a situation where the defendant had received specialized training, or was required to demonstrate a high standard of skill and knowledge, as in the case of a medical doctor, see Incollingo v. Ewing, 444 Pa. 263, 282 A.2d 206 (1971), [citing Restatement (Second) Torts, § 290, comment f, and § 299, comment f (1965)] our research discloses no case where the operator of a motor vehicle was held to a higher standard of care due to the length or nature of his experience.[2] Thus in Adley Express Co. v. Willard, 372 Pa. 252, 93 A.2d 676 (1953), a case in which the facts closely parallel those in the case at hand, the Supreme Court held the truck driver only

1. Appellants have cited the following sections of the Restatement (Second) of Torts (1965); § 283, comment d (dealing with the standard of the reasonable man); § 289(b), comment m (concerning foreseeability required of a person of superior attributes); § 296, comment c (concerning the effect of a person's special training or aptitude on the sudden emergency doctrine); § 299, comment f (concerning necessity to exercise special competence).

2. See 1 M. Meyer, Law of Vehicle Negligence in Pennsylvania § 1.18 (1970).

to the standard required of all motorists. In that case the driver was operating the plaintiff's tractor trailer truck on a four lane highway when, immediately subsequent to crossing a bridge, he collided with the defendant's truck which was in the process of making a U-turn across a median strip. The trial court charged that under the circumstances the plaintiff's truck driver should have been operating his vehicle with a greater degree of care than is ordinarily required of motorists. The Supreme Court held that this was error, stating: "Thus again a higher duty of care than was justified was imposed upon the driver of plaintiff's truck. Under all the testimony the latter was chargeable only with the failure to exercise the ordinary care required of all motorists." *Adley Express Co. v. Willard,* supra at 257, 93 A.2d at 678.

In the present case the trial court in its charge defined negligence as the want of due care under the circumstances and the failure to act as a reasonable, prudent person under the circumstances. A requirement that experienced truck drivers be subject to a higher standard of care does not impress us as being a useful concept to infuse into the law of vehicle negligence. An understanding of the ordinary standard of due care applicable to the average motorist under the multitude of changing circumstances likely to confront today's driver is already difficult to grasp and apply justly. To begin to vary the standard according to the driver's experience would render the application of any reasonably uniform standard impossible. Other jurisdictions have confronted the problem of varying degrees of care and sought to control the ceaseless variation of the concept of negligence by establishing a single standard: "Care does not increase or diminish by calling it names. We think the abstract concept of reasonable care is in itself quite difficult enough to grapple with and apply in our law without our courts gratuitously conferring honorary degrees

upon it. There is only *one* degree of care in the law, and that is the standard of care which may reasonably be required or expected under all the circumstances of a given situation. . . ." *Spence v. Three Rivers Building & Masonry Supply,* 353 Mich. 120, 130, 90 N.W.2d 873, 878 (1958). *Cf. Hoover v. Pennsylvania R.R. Co.,* 405 Pa. 642, 177 A.2d 98, *cert. denied,* 369 U.S. 873, 82 S.Ct. 1142, 8 L.Ed.2d 276 (1962); *Schiele v. Motor Freight Express, Inc.,* 348 Pa. 525, 36 A.2d 467 (1944). We decline this opportunity to develop a higher standard of care for experienced truck drivers and find that the trial court did not err in its instruction on the degree of care in the present case.

Appellants' second allegation of error concerns the charge to the jury on proximate cause. Although the trial judge commented on the concept of proximate cause throughout the charge, the essence of his definition was comprised in one paragraph: "The proximate cause of an event is that which, in a natural and continuous sequence, unbroken by any new independent cause produces the damage complained of, and without which the loss or damage would not have occurred. Now, it need not be the sole or immediate cause but it must be a substantial factor in bringing about the harm. The injury must be the natural and probable consequence of Defendant's conduct, such a consequence as under the surrounding circumstances might and ought to have been foreseen by the Defendant as likely to flow from his act." Appellants specifically object to the last sentence of this definition which they claim defines proximate cause in terms of foreseeability and probability.

In support of their conclusion that the statement is incorrect, the appellants cite the Restatement (Second) of Torts § 435(1) (1965): "If the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the *extent* of the harm or the *manner* in which it

occurred does not prevent him from being liable." [3] (Emphasis added). This section is to be read in conjunction with § 431 which defines legal cause in terms of negligent conduct which is a substantial factor in bringing about harm where no rule of law operates to relieve the actor from liability because of the manner in which the conduct resulted in the harm. Thus the fact that the conduct in question might not be reasonably foreseen to result in the particular harm or cause harm in the particular manner that in fact occurred, does not preclude liability. *Wisniewski v. The Great Atlantic & Pacific Tea Co.*, 226 Pa.Super. 574, 323 A.2d 744 (1974). *See also, Majors v. Brodhead Hotel*, 416 Pa. 265, 205 A.2d 873 (1965).

Section 435(1) was clearly designed, and has been used by the courts, to prevent defendants from escaping liability simply by showing that although their conduct is both negligent and a substantial factor producing the harm, an accident of the particular kind, occurring in the specific manner as the one in question, could not have been expected to result from the conduct involved. This becomes a difficult question in cases where the injuries are of an unusual nature or extent or the actor's conduct produces harm in some bizarre and unexpected way, but it is not an issue in the present case. In this case the injuries were the normal and customary result of a collision between motor vehicles on a high speed turnpike,

---

**3.** This subsection was quoted in *Shipley v. Pittsburgh*, 321 Pa. 494, 184 A. 671 (1936) as authority for its finding that the possibility that the particular accident as it occurred might have seemed improbable to the defendant, did not preclude liability. Subsection (2) of § 435 defines the situation where hindsight, as opposed to the foresight which has been considered an indispensable element of negligence, see, e. g., *Zilka v. Sanctis Construction, Inc.*, 409 Pa. 396, 186 A.2d 897, *cert. denied*, 374 U.S. 850, 83 S.Ct. 1915, 10 L.Ed.2d 1070 (1962), can be used to preclude liability: "The actor's conduct may be held not to be a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm."

both in their extent and the manner of their occurrence, and in that respect clearly foreseeable. For that reason it is difficult to perceive any harm in the charge. No party has offered as a defense inability to anticipate injury resulting from the present facts.

The problem with the challenged statement in the charge is that it is actually a proper instruction on foreseeability as that concept relates the actors' duty with respect to the plaintiff. As such, it is not incorrect, it is simply out of place.[4] The courts of this Commonwealth have traditionally defined negligence in terms of foreseeability, an approach which is consistent with the Restatement (Second) of Torts § 281 (1965). " 'Negligence is defined as the absence of care under the circumstances: *Beck v. Stanley Company of America*, 355 Pa. 608, 50 A.2d 306; *Palsgraf v. Long Island R. Co.*, 248 N.Y. 339, 162 N.E. 99. The test of negligence is whether the wrongdoer could have anticipated and foreseen the likelihood of harm to the injured person, resulting from his act: *Scurfield v. Federal Laboratories, Inc.*, 335 Pa. 145, 6 A.2d 559. In *Palsgraf v. Long Island R. Co.*, supra, it was stated by Cardozo, C. J. (later Justice, United States Supreme Court): ". . . the orbit of the danger as disclosed to the eye of reasonable vigilance would be the orbit of the duty." ' " *Brusis v. Henkels*, 376 Pa. 226, 230, 102 A.2d 146, 148 (1954), *quoting from Dahlstrom v. Shrum*, 368 Pa. 423, 425, 84 A.2d 289, 290 (1951).[5] *Accord, Metts v. Griglak*, 438 Pa. 392, 264 A.2d

---

4. "[W]hile foreseeability is not an element to be considered in determining whether negligent conduct was the proximate cause of an accident, it is an element to be considered in determining the existence of negligent conduct [citations omitted]." *Zilka v. Sanctis Construction, Inc.*, 409 Pa. 396, 400, 186 A.2d 897, 898, *cert. denied*, 374 U.S. 850 (1962). *Accord, Majors v. Brodhead Hotel*, 416 Pa. 265, 205 A.2d 873 (1965).

5. Restatement (Second) of Torts § 281, comment c (1965) discusses the limitation of liability to those persons who could be reasonably foreseen to be injured by the conduct: "In order for the actor to be negligent with respect to the other, his conduct must create a recognizable risk of harm to the other individual-

684 (1970). *See also, Flickinger Estate v. Ritsky,* 452 Pa. 69, 305 A.2d 40 (1973); *Stanik v. Steuber,* 439 Pa. 327, 266 A.2d 703 (1970); *Doyle v. South Pittsburgh Water Co.,* 414 Pa. 199, 199 A.2d 875 (1964).

██ ██ That the trial judge should have slipped the statement regarding foreseeability, objected to by the appellants, into the end of his instruction on proximate cause is not surprising.  Language which is substantially similar, except that it even more explicitly ties the concept of proximate cause with that of foreseeability, appears in *Becker v. Borough of Schuylkill Haven,* 200 Pa. Super. 305, 310–11, 189 A.2d 764, 767, *allocatur refused,* 200 Pa.Super. *xxx* (1963). "In determining what is proximate cause, the true rule is that the injury must be the natural and probable consequence of the wrongful act, such a consequence as under the surrounding circumstances of the case might have been foreseen by the wrongdoer as likely to flow from his act." It is apparent from the foregoing that the law of negligence in Pennsylvania is in the process of evolving as the courts slowly recognize and adopt section after section of the Restatement of Torts.  Much of the time, the former common law and an applicable Restatement section are found existing concurrently with no indication which language is preferred. *See, e. g., Wisniewski v. The Great Atlantic & Pacific Tea Co.,* supra.  Trying to coordinate the Restatement sections currently approved with the common law as it has been enunciated in the past decisions has become a highly complex and intellectually taxing task. To determine whether the trial judge's statement intro-

ly, or to a class of persons—as, for example, all persons within a given area of danger—of which the other is a member.  If the actor's conduct creates such a recognizable risk of harm only to a particular class of persons, the fact that it in fact causes harm to a person of a different class, to whom the actor could not reasonably have anticipated injury, does not make the actor liable to the persons so injured." *See also,* B. Laub, Pennsylvania Trial Guide § 619.1 (1959, Supp.1975); 1 M. Meyer, Law of Vehicle Negligence in Pennsylvania § 1.30 (1970, Supp.1974).

ducing the concept of foreseeability at the conclusion of the definition of proximate cause hopelessly misled the jury, or instilled in them any of the confusion present in the law of negligence, can only be determined by studying the entire charge. "As in all cases questioning the accuracy of a charge to the jury, we must not take the challenged words or passage out of the context of the whole charge, but must look to the charge in its entirety, against the background of the evidence in the particular case, to determine whether or not error was committed and whether that error was prejudicial to the complaining party. *Wilson v. Penna. Railroad Co.*, 421 Pa. 419, 422, 219 A.2d 666 (1966); *James v. Ferguson*, 401 Pa. 92, 97, 162 A.2d 690 (1960)." *Whitner v. Lojeski*, 437 Pa. 448, 454, 263 A.2d 889, 892 (1970).

Reviewing the charge in the case at bar, we find that the court first adequately defined proximate cause stating that it must be a substantial factor bringing about the harm. Subsequently the judge repeated the causation requirement in conjunction with the term "substantial factor" at least five times in his charge, including a brief review of the elements necessary for finding liability, and again at least eleven more times in reading the plaintiff's points for charge. If the single mention of foreseeability together with proximate cause could have been misleading to the jury, it is apparent that the connection was not emphasized. It would be preferable to omit any mention of foreseeability in this context, however, considering the otherwise careful instruction on the issue, and the frequent repetition of the "substantial factor" concept, we do not feel this single questionable reference in the lengthy, otherwise accurate charge is reversible error. Furthermore, in its brief summary of the legal highlights of the case, the court reminded the jury that they must first ascertain negligence on the part of the defendants and then determine if the negligent conduct was a substantial factor in the harm suf-

fered by the plaintiff. As was said in *Whitner v. Lojeski*, supra at 460, 263 A.2d at 895 "[t]his was the last note struck on the proximate cause theme, and it was a true note." In *Whitner* the trial court failed to qualify the "but for" mode of expression, used to explain proximate cause, with the requirement that the circumstances under consideration must be closely connected to the injury in the order of events. The Court affirmed the judgments after considering the defective language in the context of the whole charge. Justice POMEROY'S concluding statement on that issue applies even more strongly to the case at hand: "Despite the inadequacy of the treatment of proximate cause . . . we think that the charge on liability, taken as a whole, was fair and balanced, and that on the evidence before it the jury could not have been misled by the charge to [the appellant's] prejudice." *Whitner v. Lojeski*, supra at 460, 263 A.2d at 895.

The appellants' final contention relates to an allegedly prejudicial response by defendant Castora to a question asked by defense counsel in which the defendant mentioned the recent death of one of his children. Plaintiff's counsel immediately objected and the court immediately sustained the objection, admonishing the jury to disregard the testimony.[6] Appellants now complain that the instruction to disregard was unclear and that the testimony unfairly put the defendant in a sympathetic posture before the jury. Upon reading the instruction as it was recorded, we note that it is not a model of clarity, however we are also cognizant of the fact that spoken words often have an impact not shared by the cold transcription. Because the plaintiff's counsel failed to demand a clarification of the instruction, it is our

6. "[Plaintiff's counsel]: This is the sort of thing, if your Honor please—

"The Court: Yes, members of the jury, the background is one thing you will consider and don't be influenced or prejudiced by anything else."

opinion that he was probably satisfied with it at the time. However, whether he was content or not, now is not the time to raise this objection. Having neglected to ask for a clarifying instruction at the time and having failed to include the matter in his points for charge we conclude not only that appellants have waived their objection but also that the jury most likely understood the instruction as it was intended. *Gallagher v. Four Winds Motel-Hotel*, 233 Pa.Super. 1, 335 A.2d 394 (1975).

Judgment affirmed.