392 A.2d 1376

Random Alan ROSS, a minor by Random Ross (father) and Dorothy Ross (mother), his guardians, and Random Ross and Dorothy Ross

v.

Robert J. VEREB and the City of Erie, and the School District of the City of Erie, and Arthur Coake

v.

Dorothy M. SCHARRER, Additional Defendant.

Appeal of the CITY OF ERIE and Arthur Coake.

Supreme Court of Pennsylvania.

Argued Sept. 19, 1978.
Decided Oct. 27, 1978.

Jonathan Alberstadt, Asst. City Sol., Erie, for appellants.

M. Fletcher Gornall, Donald E. Wright, Jr., Erie, for Random Alan Ross et al.

James P. Lay, III, Erie, for Dorothy M. Scharrer.

T. Warren Jones, Erie, for Robert J. Vereb.

Will J. Schaaf, Erie, for School Dist.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION

LARSEN, Justice.

On the wet morning of November 22, 1972, Random (Randy) Ross, an 11-year-old boy, was struck by a car on his way to school. As a result of his injuries, he suffered permanent brain damage.

The accident occurred at the intersection of Twenty-first and State Streets in the City of Erie (one of two appellants), where Arthur Coake (the other appellant) was on duty as a crossing guard. Coake led a group of school children, including young Randy, across State Street while appellee[1] Vereb's car was skidding toward them. Coake signaled for the children to run back to the sidewalk but Randy, who was at the front of the group, instead ran forward at an angle, attempting to escape the path of Vereb's car. He failed to do so and was struck by the car while he was within a crosswalk.

Randy and his parents brought suit in trespass against driver Vereb, crossing guard Coake, Coake's employer the City of Erie, and his alleged co-employer Erie School District, who in turn joined as an additional defendant Dorothy M. Scharrer, the driver of a second car which collided with

1. Appellees include the original plaintiffs, (Randy and his parents) two defendants, the School District of the City of Erie and Robert J. Vereb, and one additional defendant, Dorothy M. Scharrer.

450

Vereb's car immediately after Randy was struck. At the conclusion of the evidence, the trial court granted the School District's motion for a nonsuit, holding that the evidence failed to show that the School District was an employer of the guard. The jury returned a verdict in the amount of $300,000 in favor of plaintiffs against defendants Vereb, Coake and City of Erie. The trial court denied motions for new trial and judgment n. o. v. Coake and the City of Erie appealed to Superior Court, which affirmed. We granted permission to appeal. Appellants present three grounds for reversal: 1) the evidence was so contradictory as to make the jury's verdict mere speculation; 2) appellants were not negligent, but even if they were, that negligence was not the proximate cause of plaintiff's injuries; and 3) the School District should not have been granted a nonsuit. We affirm.

1. Appellants contend that the verdict was based on mere guess, conjecture or surmise for the reason that various witnesses presented contradictory testimony as to the circumstances of the accident. This argument is without merit. Contradictory testimony is to be resolved by the jury, *DeQuinze v. Milliron,* 410 Pa. 568, 190 A.2d 440 (1963), and in resolving conflicting testimony on which to base its verdict, the fact-finder is *not* resorting to guess, conjecture or surmise. This resolution is one of a jury's main functions.

2. Appellants argue that Coake's negligence, if any, was not legally sufficient to constitute the proximate cause of appellee's injuries. They assert that a) there was no negligence; and even if there were, they are not liable because b) a superseding force (young Randy's own behavior) broke the causal connection between such negligence and the injury; or, c) Randy's behavior constituted contributory negligence. These contentions are without merit.

In considering a motion for judgment n. o. v., the court is to consider the evidence and all reasonable inferences therefrom in the light most favorable to the verdict winner. *Miller v. Checker Yellow Cab Co. of Bethlehem, Inc.,* 465 Pa. 82, 348 A.2d 128 (1975). Appellees presented sufficient evidence from which the jury could reasonably find the crossing guard (and, vicariously, his employer) neg-

ligent. While appellants cite the crossing guard's (Coake's) action in sending the group of school children back to the curb as proof of no negligence, appellants overlook Coake's negligent behavior in deciding to start the children across the street at the same time he saw Vereb's car speeding toward them on a wet street and further Coake's decision not to watch the car because he was too busy "watching Randy and how the light was changing".

Whether Randy's intervening act of running away from the rest of the group constituted a superseding cause of harm was a matter for the jury's determination. *Bleman v. Gold,* 431 Pa. 348, 246 A.2d 376 (1968); *Clevenstein v. Rizzuto,* 439 Pa. 397, 266 A.2d 623 (1970). Appellants state that Randy "flagrantly disobeyed the instructions" of the crossing guard, that he "acted independent of, and contrary to, the guard, thereby eliminating, or superseding, any possible relationship between the guard's negligence, if any, and [Randy's] injuries". (Brief for Appellants, pp. 11–12.) This Court noted in *Miller, supra,* that we follow Section 447 of the Restatement (Second) of Torts (1965) which states, in part:

> The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the Actor's negligent conduct is a substantial fact in bringing about, if
>
> \* \* \* \* \* \*
>
> (c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent. [*See, Estate of Flickinger v. Ritsky,* 452 Pa. 69, 305 A.2d 40 (1973).]

The jury could reasonably have determined that Randy's running at the sight of the approaching vehicle was a normal consequence of being placed in a dangerous situation by appellant Coake's negligently leading the children into the street. Even appellants' brief refers to the child's "frantic" dash (page 11). If we expected young children to

act calmly and rationally, by adult standards, in travelling to school, then there would be no need to have crossing guards. And if we use crossing guards because we consider children unable to evaluate traffic safety from the sidewalk, then how can we expect a child to act calmly and rationally when he is suddenly faced with danger while halfway across a busy street? The only reason Randy was in a perilous place, in the middle of the street with a speeding car on wet paving bearing down on him, was that appellant Coake negligently caused him to be in that position by starting the children across the street. Applying Restatement Section 447, *supra,* Randy's "frantic" running was not a superseding cause of his harm.

 We reject the claim that we must find as a matter of law that Randy's action constituted contributory negligence which relieved appellants of liability. There is a rebuttable presumption that children between the ages of seven and fourteen years are incapable of negligence. The court correctly charged the jury that it was to determine whether Randy was negligent, measuring his actions against the standard of the knowledge and experience of eleven-year-olds. Based on the facts aforementioned, the jury could, and did, properly find that Randy was not guilty of contributory negligence. Additionally, the testimony of one witness indicates that Randy's run would have successfully removed him from danger had not the skidding vehicle suddenly changed direction.

 3. Lastly, the trial court acted correctly in granting the School District's motion for a nonsuit. Appellants argue that the nonsuit was error because the School District was a co-employer (along with defendant City of Erie) of appellant Coake and therefore was liable under principles of *respondeat superior.* We agree with the trial court's determination, as a matter of law, that the School District was not an employer of the crossing guard. An employer-employe relationship exists when the "employer" has the right to select, the power to discharge, and the right to direct the manner of work and its outcome, of the "employe". *Sweet v. Pennsylvania Labor Relations Board,* 457 Pa. 456, 322 A.2d

362 (1974). The Erie School District had none of these rights or powers. Appellant Coake was hired in accordance with the Pennsylvania Municipal Code, Act of June 23, 1931, P.L. 932, § 2010, added by Act of Nov. 24, 1967, P.L. 539 [53 P.S. § 37010 (1978 Supp.)], which states:

§ 2010 Special school police

Upon *request* of the board of school directors of the school district in which a city is located, the city council *may* appoint special school police who shall have the duty of controlling and directing traffic at or near schools and who shall be in suitable and distinctive uniform and shall display a badge or other sign of authority. Such police shall be vested with all the power of local police officers and *while on duty shall be under and subject to the direction of the mayor. They shall serve at the pleasure of the city counsel* . . . The compensation of the school police, if any, shall be fixed by the city council and shall be jointly paid by the city council and the board of school directors, in a ratio to be determined by the city council and the board of school directors. If [they] are unable to determine the ratio of compensation of the police to be paid . . . each shall pay one-half . . . (Emphasis added.)

All the "powers of employer" have been posited upon the City of Erie. While the School District could *request* the appointment of crossing guards, the city council made the actual decision to hire. Once hired, crossing guards serve at the pleasure of *city council,* and they are subject to the direction of the *mayor.* In light of the statutory provision, the shared financial obligation imposed on the School District does not confer supervisory power. Rather, the requirement of financial participation is merely a method of allocating to the community's education budget (the school district's budget) a portion of an expense which is indirectly education-related. Absent the employer-employe relationship, the School District cannot be held liable vicariously for the crossing guard's negligence.

Appellants further contend that the nonsuit was error because there was a jury question on the School Dis-

trict's liability independent of its relationship to the crossing guard. They argue that section 5–510 of the School Code[2] imposes on school districts a duty to protect students on their way to school. It is unnecessary for us to determine whether appellants' interpretation of the statute is correct, since this question of law was not presented at the earlier stages of this case and is therefore waived.

Finally, plaintiffs' complaint only contended that the school district was liable under principles of master-servant. It did not raise any independent basis of liability such as violation of the statutory duty now alleged by appellants. Had appellants chosen, they could have alleged this theory of liability at trial by joining the School District as an additional defendant. They failed to do so.

Order of the Superior Court is affirmed.

ROBERTS and NIX, JJ., concur in the result.

2. Act of March 10, 1949, art. V, § 510 (24 P.S. § 5–510). [While this statutory provision was amended in 1974, after the present cause of action accrued, the amendment merely added new language not relevant to this case.]