421 A.2d 839

Molly BROWN, a minor, by Harry M. Brown, her guardian,
and Harry M. Brown and Patricia Brown, parents in their
own right, Appellants,

v.

John F. TINNENY and Timothy A. Labos

v.

MOUNT LEBANON SCHOOL DISTRICT,
Additional Defendant.

Superior Court of Pennsylvania.

Argued April 16, 1980.

Filed Sept. 19, 1980.

John C. Carlin, Jr., Pittsburgh, for appellants.

John A. Robb, Jr., Pittsburgh, for Tinneny, appellee.

J. W. Carroll, Jr., Pittsburgh, for Labos, appellee.

Edmund L. Olszewski, Pittsburgh, for Mt. Lebanon, appellee.

Before SPAETH, WICKERSHAM and LIPEZ, JJ.

SPAETH, Judge:

This appeal arises from an order dismissing appellants' motion for a new trial in a negligence case.

On October 14, 1976, Molly Brown, age 13, was walking home from school. Behind her were several boys, including John Tinneny and Timothy Labos, who were also walking home from school. (Tinneny and Labos were both 16 years old.) The boys were horseplaying and tossing stones at each other. When one of the stones struck Molly, she increased her pace and crossed the street. The boys, however, also crossed the street. About this time Tinneny saw near the curb a small glass vial, approximately two inches high and one half inch wide, with a hard, black cap. The vial contained a colorless liquid. Tinneny picked up the vial and tossed it at Labos. The vial missed Labos and landed in the grass. As Labos began to pick up the vial Tinneny came forward and grabbed him. The impact of Tinneny's grip

dislodged the cap on the vial and caused the liquid inside to splash on Molly's back. At the time Molly was on the sidewalk approximately 10 to 15 feet from Tinneny and Labos. It so happened that the liquid in the vial was nitric acid, and Molly sustained burns where the acid splashed on her body.

Molly's parents, as guardians of Molly and in their own right, sued Tinneny and Labos for Molly's injuries. Tinneny and Labos joined the Mount Lebanon School District as an additional defendant on the theory that the nitric acid came from a school laboratory, and the district had failed to exercise proper control over the acid. The parties stipulated to the amount of Molly's damages, and the case was tried to a jury on the issue of appellees' liability only. At trial, there was no dispute between the parties as to the essential facts of the case. The jury returned verdicts against Molly's parents, as Molly's guardians and in their own right, and in favor of Tinneny, Labos, and the school district.

As appellants, Molly's parents contend that the trial court committed reversible error when it instructed the jury on the Restatement (Second) of Torts § 435(2) (1965).[1] This provision states:

> The actor's [defendant's] conduct may be held not to be a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm.

Except for its deletion of the phrase "to the court," the trial court, over appellants' objection, read this section verbatim to the jury. Appellants assert that this was error because section 435(2) explicitly places upon the court the responsi-

---

1. Appellants also argue that a new trial is required because the trial court 1) refused to allow appellants to call Officer Reppar as a witness; and 2) allowed appellees' witness, Mrs. Labos, to testify "that her son never took chemistry, or owned a chemistry set, nor was he permitted to bring any chemicals into the house, nor did she explain the dangers of chemicals to him, and as to how the boys felt about the incident." Because of our disposition *infra*, we do not consider these arguments.

bility of determining whether an actor is to be relieved, as a matter of law, from the consequences of his negligent conduct because of the extraordinariness of his conduct having caused the harm suffered.  In appellants' view, by charging on section 435(2), the court confused its functions with the jury's.  Appellants further assert that looking back from Molly's harm to Tinneny's and Labos's negligent conduct, it cannot be said as a matter of law that it was highly extraordinary that the conduct should have brought about the harm.

We agree with appellants that section 435(2) describes a function of the court, not the jury.  The section states that it must appear "to the court" that it is highly extraordinary that the actor's negligent conduct should have brought about the harm in question, if the actor is to be held not to have been the legal cause of the harm.  Comments c, d, and e to section 435(2) similarly refer to determinations by the court in the application of the section.  Moreover, the Restatement (Second) of Torts § 453 (1965) provides:

> It is the exclusive function of the court to declare the existence or non—existence of rules which restrict the actor's responsibility short of making him liable for harm which his negligent conduct is a substantial factor in bringing about, and to determine the circumstances to which such rules are applicable.

Comment a to section 453 states:

> The rule stated in this Section applies to the determination of the existence or non—existence of rules restricting the actor's responsibility, as stated in §§ 435–452, and §§ 454–461.[2]

---

**2.** *Cf.* Restatement (Second) of Torts § 434, Comments a and b (1965):
    a.  The word "court" is used to denote any person or group of persons exercising the judicial function in any stage of an action of negligence.  The word "court" includes the trial judge presiding at the trial, a judge or group of judges sitting to hear a motion for a new trial, and an intermediate or final appellate court reviewing the action of such judge or judges.
    b.  The word "jury" includes any "trier of fact."  It may, therefore, include an arbitrator or a trial judge sitting without a jury.

We also agree with appellants that looking back from Molly's harm to Tinneny's and Labos's negligent conduct, it cannot be said as a matter of law that it was highly extraordinary that their conduct should have brought about the harm. It was certainly not highly extraordinary that Molly was burned when the nitric acid splashed on her—indeed the burns were inevitable. Nor was it highly extraordinary that the cap to the vial containing the acid was dislodged during Tinneny's and Labos's horseplay and the acid thrown a distance of 10 to 15 feet. That the vial contained nitric acid was somewhat unusual, but we cannot say as a matter of law that it was highly extraordinary that liquid in a small, unmarked vial lying by the roadway should prove to be corrosive or otherwise capable of causing physical injury.[3]

In holding that section 435(2) sets forth a function of the court, and that appellees were not entitled to relief from liability under that provision, we realize that "[a]nalytically, the highly extraordinary nature of the result which has followed from the actor's conduct ... indicates that the hazard which brought about or assisted in bringing about that result was not among the hazards with respect to which the conduct was negligent." Restatement (Second) of Torts § 435, Comment c. *See also* Restatement (Second) of Torts § 281, Comment h (1965); *cf. Scarf v. Koltoff,* 242 Pa.Super. 294, 363 A.2d 1276 (1976) ("foreseeability," "proximate cause," "duty" are related legal concepts used to limit liability for negligent acts). We also realize that whether a victim's harm proceeded from a hazard the foreseeability of which rendered the actor's conduct negligent is a question for the jury in a case where different conclusions may be reached on the issue. *Noon v. Knavel,* 234 Pa.Super. 198,

---

**3.** We thus reject appellees' contention that in applying section 435(2) to the facts of this case, a distinction should be made between Tinneny and Labos, on the ground that Tinneny had previously used nitric acid in a high school chemistry class, whereas Labos had had no prior experience with nitric acid. Regardless of their prior experience or inexperience, it cannot be said as a matter of law that it was highly extraordinary that Molly was harmed by Tinneny's and Labos's conduct.

339 A.2d 545 (1975). *See generally Ross v. Vereb,* 481 Pa. 446, 392 A.2d 1376 (1978); *Miller v. Checker Yellow Cab Co. of Bethlehem, Inc.,* 465 Pa. 82, 348 A.2d 128 (1975); *Estate of Flickinger v. Ritsky,* 452 Pa. 69, 305 A.2d 40 (1973); *Skoda v. W. Penn Power Co.,* 411 Pa. 323, 191 A.2d 822 (1963); *Marinelli v. Montour Railroad Co.,* 278 Pa.Super. 403, 420 A.2d 603 (1980); Restatement (Second) of Torts § 453, Comment b (where under undisputed facts there is room for reasonable difference of opinion as to whether third person's intervening negligence was foreseeable jury question is presented). Further, we realize that in the present case the foreseeability of the hazard to Molly created by Tinneny's and Labos's horseplay was a question legitimately before the jury, and that it was within the jury's prerogative to conclude that because a reasonable person would not have foreseen the hazard that caused Molly's injuries, Tinneny and Labos had not breached their duty towards her and were not liable for her injuries. *See Pegg v. General Motors Corp.,* 258 Pa.Super. 59, 391 A.2d 1074 (1978); *Lambert v. PBI Industries,* 244 Pa.Super. 118, 366 A.2d 944 (1976); *Fredericks v. Castora,* 241 Pa.Super. 211, 360 A.2d 696 (1976). Nevertheless, we believe that the trial court erred in charging on section 435(2). The duties of a trial court in charging a jury are clear:

In *Smith v. Clark,* 411 Pa. 142, 190 A.2d 441 (1963), the Supreme Court stated, "It is basic to a fair trial that the issues be clearly defined for a jury's intelligent understanding and that in determining if prejudicial error is present, the entire charge must be considered and its general effect noted . . . A trial judge may properly define all pertinent questions of law, but if he fails to clarify the issues and the application of the law to the facts, a fair trial is not present." *id.,* 411 Pa. at 147, 190 A.2d at 443. The charge should be clear and precise and so couched as not to confuse the jury. *Cohen v. Kalodner,* 236 Pa.Super. 124, 345 A.2d 235 (1975); *Ryan v. Furey,* 225 Pa.Super. 294, 303 A.2d 221 (1973); *Acquaviva v. Hartman,* 203 Pa.Super. 505, 201 A.2d 239 (1964).

*Osterritter v. Holl,* 259 Pa.Super. 112, 115–116, 393 A.2d 742, 744 (1978).

*See also Hrivnak v. Perrone,* 472 Pa. 348, 372 A.2d 730 (1977); *Whitner v. Lojeski,* 437 Pa. 448, 454, 263 A.2d 889, 892 (1970); *Jones v. Montefiore Hospital,* 275 Pa.Super. 422, 418 A.2d 1361 (1980). In the present case, the trial court gave the following instruction on negligence and legal cause:

Negligence is defined in the law as lack of due care under the circumstances. Due care is the care which a reasonable prudent person would exercise under the conditions set forth by the facts of this case.

Negligence is the doing or the failure to do the thing which a reasonable prudent person would or would not do. It may consist of acts of commission or acts of omission. It may be the doing of something which a reasonable prudent person would not do. It may be failing to do something which a reasonably prudent person would do.

Hence, your first question which you must decide when you retire to the juryroom is was any Defendant negligent. Did any Defendant do something which a reasonable prudent person would not have done under all the circumstances? Or did he fail to do something which a reasonably prudent person would have done under all the circumstances? .

\* \* \* \* \* \*

If you find negligence, you must determine whether it was a proximate cause or one of the proximate causes of the incident and of the resultant damages. Now, proximate means immediate, nearest, next in order, and, in its legal sense, closest in causal connection.

So, proximate cause means that, which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the accident, and without which the result would not have occurred.

An act or omission must be such as would probably result in harm. And it must be a substantial factor bringing about the Plaintiff's harm.

Now, there may be more than one proximate cause of an accident or injury. Each concurrent or efficient cause contributing directly to the accident or injury may be a proximate cause thereof. Therefore, you may find that two or more separate and distinct acts or omissions constitute current negligence. This is also called joint negligence.

Negligence, in order to render a person liable, need not be the sole cause of the accident. It is sufficient that his negligence, concurring with one or more other efficient causes, is the proximate cause of the injury. Accordingly, where several causes combine to produce injuries, a Defendant is not relieved of liability because he is responsible for only one of them. It being sufficient that his negligence is an efficient cause without which the injury would not have resulted.

\* \* \* \* \* \*

Now, I have defined negligence for you generally, and now I'm going to read to you some sections of the law which I think are of particular and specific importance to the case at bar, because you have heard a great deal of argument concerning the recognition of the existence of a risk and how that may affect someone's negligence.

I charge you that the actor, that is the person whose conduct is asserted to have been negligent, the actor is required to recognize that his conduct involves a risk of causing an invasion of another's interest, if a reasonable man would do so while exercising such attention, perception of the circumstances, memory, knowledge of other pertinent matters, intelligence and judgment, as a reasonable man would have.

And secondly, our law says this: If the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred, does not prevent him from being liable. The actor's conduct may be held not to be a legal cause of harm to another where, after the event, and looking back

from the harm to the actor's negligent conduct, it appears highly extraordinary that it should have brought about the harm.

Now, I'll try to bring that into context for you, members of the jury. If people are engaged in such conduct which bears an unreasonable risk or gives rise to an unreasonable risk of the invasion of somebody's interest, in this case to his bodily security, to be free from invasions of his bodily security, it does not matter that the particular harm which occurred was one which was unforeseen. And that basically is what the Plaintiff contends in this case, that these boys were engaged in a course of conduct. They were throwing things at each other, irrespective of what those things were, that they were throwing things at each other in an area where that caused an unreasonable risk to other people, that their interest in bodily security might be invaded. So that when that actual invasion of bodily security occurred, the fact that they did not foresee the seriousness or did not foresee the particular kind of harm which occurred, does not relieve them of liability. And that is the law.

But you will bear in mind also that in certain instances, the actor's conduct may be held not to be a legal cause of harm to another where, after the event, and looking back from the harm to the actor's negligent conduct, it appears highly extraordinary that it should have brought about the harm. And it is for you to determine whether the conduct in which they were engaged constituted negligence in the circumstances of this case or whether it did not.

N.T. at 228–241.

Viewing the trial court's charge in its entirety we believe it fatally defective in that it allowed the jury to find that because of the extraordinariness of its occurrence, appellees were not the legal cause of Molly's harm, even though appellees' conduct had been negligent, and even though their negligent conduct was a substantial factor in causing the acid to splash on Molly. If the jury found that appellees had

been negligent, and that their conduct had been a substantial factor in causing Molly's harm, then appellees' liability was established, and the jury had no further determinations to make. Of course, in determining whether appellees had been negligent, the jury had to determine whether appellees should have foreseen the risk of harm to Molly created by their conduct; but after considering the foreseeability of the hazard to Molly in connection with the issue of appellees' negligence, the jury was not entitled to reconsider the foreseeability of the hazard in connection with the issue of legal cause, as they were invited to do by the trial court's charge.[4]

Our cases hold that "foreseeability is not an element to be considered in determining whether negligent conduct was the proximate cause of an accident, [although] it is an element to be considered in determining the existence of negligent conduct." *Fredericks v. Castora, supra*, 241 Pa. Super. at 218, n.4, 360 A.2d at 699 n. 4, *quoting Zilka v. Sanctis Construction, Inc.*, 409 Pa. 396, 400, 186 A.2d 897, 898–9, *cert. denied*, 374 U.S. 850, 83 S.Ct. 1915, 10 L.Ed.2d 1070 (1962). *See also Dahlstrom v. Shrum*, 368 Pa. 423, 84 A.2d 289 (1951). We have further held that "[o]nce the actor's conduct has been found to constitute negligence, the actor is responsible for all the unforeseen consequences thereof no matter how remote, which follow in a natural sequence of events . . .," *Hoover v. Sackett*, 221 Pa.Super. 447, 451–52, 292 A.2d 461, 463–4 (1972) (citations omitted); *See also Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 97, 337 A.2d 893, 900 (1975) (plurality op.), and accordingly have reversed a jury verdict where the trial court erroneously charged that foreseeability was a consideration to be taken into account in determining legal cause, *McCloy v. Penn Fruit Co.*, 245 Pa.Super. 251, 369 A.2d 389 (1976).

Nor are we able to conclude that the trial court's error when read in the context of the charge, was harmless error, or that it did not contribute to the verdict. *See Hamil v.*

4. *See* in particular the last paragraph quoted from the charge above, starting with the admonition, "But you will bear in mind . . . ."

*Bashline*, 481 Pa. 256, 392 A.2d 1280 (1978). The court repeated its erroneous instruction twice in its original charge, and again in its supplemental charge when the jury requested the court to repeat its definition of negligence. While it might be expected that a fact–finder who concludes that a hazard resulting in harm is foreseeable will also conclude that it was not highly extraordinary that the harm resulted from the negligent conduct that created the hazard, or conversely, that one who concludes that it was highly extraordinary that the harm resulted from the actor's negligent conduct will also conclude that the hazard resulting in harm was unforeseeable, we have no assurance that the jury in the present case understood from the trial court's charge the relationship between the court's 435(2) instruction and its negligence instruction. Given the charge, it is entirely possible that the jury believed that a reasonable person should have recognized the risk of harm to Molly created by Tinneny's and Labos's horseplay with the vial, but nevertheless exonerated appellees because they believed that it was highly extraordinary that the harm that occurred in fact occurred.

Reversed and remanded for a new trial.