**Stanley v. City of Philadelphia**

*Michael H. Landis,* for plaintiff.

*Margaret M. Fenerty, Kwame O. Agyeman* and *Alan C. Ostrow,* for defendant.

BERNSTEIN, *J.,* November 9, 2004—Plaintiff, Joseph Stanley, filed a complaint against defendants, the City of Philadelphia, the Department of Transportation of the Commonwealth of Pennsylvania and Bradley Mallory, secretary of transportation on May 23, 2004. Plaintiff sought to recover damages for injuries sustained when he was struck by a motor vehicle driven by Edward Reed Jr., as he was crossing Walnut Lane near 6100 Morris St., in Philadelphia. Plaintiff alleged that his injuries were caused by the negligent maintenance of a stoplight located at the crosswalk.

Prior to filing this complaint, on May 8, 2002, plaintiff Joseph Stanley had settled with Mr. Reed. He signed a release agreement that released Reed from all liability in exchange for $15,000, the limits of Mr. Reed's personal insurance coverage.

On October 10, 2002, defendant city filed a petition for leave of court to join as an additional defendant, their

own employee, Edward Reed, the driver of the vehicle which struck the plaintiff. On November 19, 2002, this petition was granted. Six days later, the defendant city filed a joinder complaint averring that any damages and injuries alleged in the complaint were solely the result of the negligence and carelessness of Edward Reed, city's own employee.

On January 17, 2003, the plaintiff filed a "first amended complaint." The amended complaint renewed the allegations of the original complaint and added a claim for vicarious liability, for the negligence of Edward Reed. The amended complaint alleged that Reed was acting in the scope of his employment when he struck Mr. Stanley. The caption in plaintiff's first amended complaint does not list Edward Reed as a defendant. Accordingly, Edward Reed can be considered only an additional defendant and has been an additional defendant since November 19, 2003, when the city joined their own employee to this action.

On October 20, 2003, a stipulation was filed dismissing defendants the Department of Transportation of the Commonwealth of Pennsylvania and Bradley Mallory, secretary of transportation.

A jury trial began on November 24, 2003. Possibly concerned by the procedural uncertainty presented because the amended complaint raised no claim against the additional defendant,[1] Ms. Fenerty, attorney for defendant city, requested "Your honor, what I was hoping the jury slip could read is a finding against the city, and a finding against Mr. Reed. We would like the jury to de-

---

1. The city did not file any pleading renewing its claim over against its employee after the amended complaint was filed.

termine Mr. Reed's liability."[2] At that conference, Ms. Fenerty explained that she wanted the jury to distinguish the negligence attributed to Mr. Reed's driving from the negligence associated with the maintenance of the traffic signal. This request was granted.

At the close of plaintiff's case in chief, defendant city moved for a directed verdict as to claims for pain and suffering. The motion was denied. On December 11, 2003, the jury rendered a verdict for the plaintiff in the amount of $987,000. Negligence was apportioned as: plaintiff 10 percent, Edward Reed 40 percent, and, for the city, 50 percent. Pursuant to comparative negligence principles, the verdict was reduced by the percentage of the plaintiff's negligence to $888,000.

Defendant filed post-trial motions on December 15, 2003, which included a motion to mold the damages. The motion requested the court deduct from the verdict all damages caused by Mr. Reed's negligence. Defendant claimed that when plaintiff released additional defendant Edward Reed from liability, they released his employer city from vicarious liability. Defendant's motion to mold damages was granted and the verdict was reduced by 40 percent, the percentage attributed to defendant Edward Reed's negligence, to $493,000. All other post-trial motions were denied.

Defendant city timely filed this appeal on May 21, 2004, and plaintiff timely filed a cross-appeal on May 28, 2004.

On June 7, 2004, the court ordered the parties to submit a "concise statement of matters complained" about

---

2. N.T., vol. 1, p. 40.

on appeal. Defendant city presents three claims of error. Defendant purports to claim that the trial court erred by permitting its employee, Edward Reed Jr., to be an additional defendant in this case. The defendant purports to claim that it was prejudiced by allowing their employee, who they brought into this action, to be a party in the same proceeding in which the negligent maintenance claim against the city was to be decided. Defendant also alleges that the trial court's instruction on factual cause was erroneous. Finally, defendant alleges error in the denial of defendant's motion for a directed verdict on the issue of pain and suffering. Defendant claims the evidence, as a matter of law, failed to show "permanent loss of bodily function" as required by the Political Subdivision Tort Claims Act.

Plaintiff, on appeal, only claims error in molding the damages from $888,000 to $493,000. Plaintiff claims that the release of additional defendant Reed did not release the city from vicarious liability and that defendant city remains liable for the negligence of their employee, Mr. Reed.

On the morning of September 21, 2001, plaintiff Joseph Stanley, then 74, left his apartment for breakfast. Mr. Stanley resided alone at the Four Freedoms House, a senior citizen apartment building located at the intersection of Walnut Lane and Morris St. in the Germantown section of Philadelphia. After leaving Four Freedoms House, Mr. Stanley attempted to cross Walnut Lane at a crosswalk. While crossing the street, he was struck by a car and severely injured. The driver of the vehicle, Mr. Reed, was a sanitation employee working for the city at the time of the accident. When he struck Mr. Stanley, Mr. Reed was in his personal vehicle. He had already

reported to work and had received the location for his work assignment. Mr. Reed was being paid by the city at the time of the accident.

The crosswalk where the accident occurred enables pedestrians to cross Walnut Lane safely. The traffic signal, hanging at the crosswalk, remains green to oncoming traffic unless a button is pushed from the sidewalk. Once the button is pushed, the traffic signal is designed to change from green to yellow and finally to red. When the light turns red, the pedestrian is given a walk signal indicating that it is safe to cross the street.

Police Officer Sisca arrived at the scene shortly after the accident. He tested the traffic signal located at the crosswalk and determined that the signal was not operational. Traffic on Walnut Lane was not signaled to stop when the officer pushed the button on the traffic signal.

The Four Freedoms House tenant council had previously complained to the defendant city about problems with the traffic signal. Although the residents had complained that the signal did not give pedestrians adequate time to cross the street, no evidence was presented that the city ever inspected the traffic signal after being notified that it was malfunctioning.

After the accident, plaintiff was treated by Dr. Barry Mann, who concluded that Mr. Stanley will never be able to live unassisted again. He also found that Mr. Stanley cannot walk without the assistance of a walker. Before Mr. Stanley was hit by Mr. Reed's automobile, he was self sufficient, resided alone and enjoyed taking long walks in a park located near the Four Freedoms House. Since the accident he resides at an assisted living facility.

Defendant city has alleged three trial errors on appeal. City claims it was prejudiced when the trial court granted the city's motion to join its own employee to this action. This court finds it difficult to understand how defendant city could claim prejudicial error when the court granted the city's own motion to bring Mr. Reed into this litigation. On October 10, 2002, defendant city filed a petition for leave of court to join as an additional defendant their own employee, Edward Reed. On November 19, 2002, the petition was granted. On November 26, 2003, the defendant city filed a joinder complaint averring that any damages and injuries alleged in the complaint were solely the result of the negligence and carelessness of Edward Reed, city's own employee.

Not only did the defendant win a motion allowing it to bring Mr. Reed into the litigation as an additional defendant, but trial counsel for the city specifically requested that, "the jury slip could read is a finding against the city, and a finding against Mr. Reed. We would like the jury to determine Mr. Reed's liability." [3] Nonetheless, defendant city purports to appeal on the basis that the court granted both of their requests.

Common sense as well as the Pennsylvania Superior Court tells us that, "A prevailing party is not aggrieved and therefore does not have standing to appeal an order which has been entered in his or her favor." [4] The court allowed the city to add Mr. Reed as an additional defendant. The court also acceded to the city's request that the same jury determine Mr. Reed's liability. The city is not

---

3. N.T., vol. 1, p. 40.

4. *Ratti v. Wheeling Pittsburg Steel Corp.*, 758 A.2d 695 (Pa. Super. 2000).

an aggrieved party, beyond that nothing further need be said about this purported issue.

Defendant next alleges that the trial court erred when giving the jury its instruction on "factual causation." The trial judge gave the jury the following instruction: "The plaintiff must prove to you that defendant's conduct caused the plaintiff harm. That's factual cause. Conduct is a factual cause of harm, when the harm would not have occurred absent the conduct. An act is a factual cause of an outcome, if, in the absence of the act, the outcome would not have occurred. A defendant's negligent conduct need not be the only factual cause of a plaintiff's harm. The existence of other causes does not relieve the defendant from liability, as long as the defendant's cause was a factual cause of the injury." [5]

This instruction, which is virtually verbatim from the Pennsylvania Suggested Standard Civil Jury Instructions 3.25, is an accurate statement of Pennsylvania law. Arguing pure semantics, defendant city claims error because the words "substantial factor" were not specifically used in the charge. Oddly enough, it was plaintiff, not defendant, who objected to the absence of the words "substantial factor" in the jury charge. Although, on appeal, new counsel for defendant city claims this issue has been preserved for appeal, it was not. Plaintiff objected to the court's suggested charge, referring to the factual cause language, by saying: "Your honor, I would object to that charge. I think the jury needs to be charged on proximate cause as being a substantial factor, but it need not be the sole substantial factor. I think that suggests, but for causation." Defense counsel disagreed, and, refer-

---

5. N.T., vol. 7, pp. 112-13.

ring to the factual cause language, asked for it saying, "Your honor, I think that that charge [referring to the factual cause language] explains the facts of this case very well, and I think it lays it out for the jury pretty clearly." [6] This statement was made in opposition to plaintiff's objection and cannot be rewritten post verdict to preserve the issue for appeal.

Additionally, the charge as given was correct. Noting the problems with defining and explaining the concept of "substantial factor," the Civil Instructions Subcommittee of the Pennsylvania Supreme Court Committee for Proposed Standard Jury Instructions Notes following Rule 3.25 on legal cause state:

"Confusion has been generated, compounded, and perpetuated by various attempts to make clear to the jury the ramifications of the distinction between a factual cause of an accident and a legal cause of an accident. In *Jeter v. Owens-Corning Fiberglas Corp.,* 716 A.2d 633 (Pa. Super, 1998), the Superior Court revisited the question of legal cause. In that case the trial judge, in response to a jury question, read a Webster's dictionary definition of 'substantial' as 'considerable in quantity, significantly large.' The Superior Court held that this was not an accurate definition of 'substantial' as used in the legal sense, and therefore this instruction required a new trial. In explaining the legal definition of 'substantial contributing factor,' the court reviewed the history since its inception into Pennsylvania law. The 'substantial factor' test, initiated with the Restatement (Second) of Torts §431 (1965), was adopted in Pennsylvania in *Ford v. Jeffries,* 474 Pa. 588, 379 A.2d 111 (1977). The Penn-

6. N.T., vol. 6, p. 10.

sylvania Supreme Court cited with approval the comment to Restatement section 431, which stated that a substantial factor is '[conduct] that has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense.' This definition does not require any quantification as long as the cause is significant or recognizable. If an event is a significant or recognizable cause, 'it need not be quantified as considerable or large.' Thus, the term 'substantial' means only 'significant.' In *Jeter,* the Superior Court said that the proper evaluation is whether the conduct was "on the one hand, a substantial factor or a substantial cause or, on the other hand, whether the defendant's conduct was an insignificant cause or a negligible cause. It is not sufficient merely to tell the jury that the negligence must have been a 'cause,' because there is rarely a case where a properly named defendant has not, in some manner, 'caused' the accident; however, this is not to say that the conduct is the legal cause. For example, if a defendant negligently brings his or her vehicle to a sudden stop at a traffic light, where the defendant is struck from the rear one minute later by another defendant, the defendant's passenger's injuries have been 'caused' by the defendant's conduct of merely being on the road, but no court would say that his or her negligent conduct was the 'legal cause' of the accident."

"On the other hand, it does not serve justice to make the above-stated commonsense proposition of legal cause so cumbersome as to be unintelligible to all but the legally educated juror. For this reason, most of the usual legal phrases have been jettisoned from the charge on factual cause. The term 'factual cause' is retained to inform the jury that the plaintiff must also prove causa-

tion, and that not all causes are the 'legal cause.' But 'proximate cause,' a term that attempts to give substance to the distinction between factual cause and legal cause, but which 'means nothing to an ordinary jury,' *Rodgers v. Yellow Cab Co.,* 395 Pa. 412, 422, 147 A.2d 611, 617 (1959), has been deleted. Similar synonyms such as 'efficient cause' and 'substantial cause' have been rejected."

"Also rejected are the unnecessarily confusing concepts of 'foreseeability and "natural and probable consequence." To charge a jury that causation does not exist unless the defendant reasonably should have "foreseen" the harm invites them to speculate about factors properly having no place in the consideration of legal cause. For example, all persons would foresee that if they ignored a red light, an accident could result; however, how many could foresee that as a result of that negligence, a motorist legally entering the intersection would suddenly stop, causing the following vehicle to swerve onto the sidewalk, hitting a telephone pole, which landed on the plaintiff.' See *Hoover v. Sackett,* 221 Pa. Super. 447, 292 A.2d 461 (1972). Further confusion invariably results if the same standard of foreseeability is used with respect to the personal injuries sustained. 'Natural and probable consequence' is merely another synonym for 'foreseeability' and invites the jury to the same speculation. The confusion is compounded by the consideration whether the jury should look backward from the results, or forward from the initiating conduct. It is for these reasons that the Restatement specifically rejects the concept of 'foreseeability' as having relevance to the issue of legal cause. Restatement (Second) of Torts §435 (1965). In *Brown v. Tinneny,* 280 Pa. Super. 512, 421 A.2d 839 (1980), it was held that the trial judge had com-

mitted reversible error by reading Restatement (Second) of Torts 435(2) almost verbatim to the jury as an instruction. Judge Spaeth, speaking for a three-member panel of the Superior Court, stated that the section cited described the function of the judge, not the jury. The section states that the defendant's conduct may be held not to be a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears 'to the court' highly extraordinary that it should have brought about the harm. The appellate court analyzed facts and found that relief under section 435(2) was not available to the defendants in this case and, further, that any decision regarding its applicability was a decision of the court."

"Although the substantial factor test has been adopted exclusively by the Restatement and cited with approval by Pennsylvania courts, Restatement (Second) of Torts 431(a) (1965); *Whitner v. Lojeski,* 437 Pa. 448, 263 A.2d 889 (1970), it has led to some confusion among jurors. Consequently, the subcommittee recommends that the emphasis be on cause and that the definition of factual cause be so stated as to emphasize that it need not be so considerable or large as to be confused with the plaintiff's burden of proof, which is considerably higher."

Jury confusion from the word substantial has been documented in appellate decisions. In *Curran v. Greate Bay Hotel and Casino,* 434 Pa. Super. 368, 643 A.2d 687 (1994), the jury found that defendant Sands Hotel's negligence was not a substantial factor and in the same verdict interrogatory allocated 30 percent of the causal harm to Sands Hotel. Obviously the jury misunderstood the concept of substantial factor, concluding that 30 percent was not large enough to be "substantial." Likewise,

in *The City of Philadelphia v. Gray,* 534 Pa. 467, 633 A.2d 1090 (1993), the jury determined the negligence of a driver employed by defendant SEPTA not a "substantial factor" in causing plaintiff's injuries. That same jury allocated 25 percent of the causal negligence to SEPTA. Obviously that jury misunderstood the concept of substantial factor, concluding that 25 percent was not "substantial." Pennsylvania is not alone in moving towards a more realistic factual cause formulation. In May 2003, the American Law Institute proposed replacing substantial factor with factual cause. Final approval is scheduled for the spring 2005 meeting. For the reasons stated above, the instruction given by the court on "factual cause" is an accurate statement of Pennsylvania law.

Finally, the defendant alleges that the trial court erred in denying defendant's motion for directed verdict on the issue of "permanent loss of bodily function." Defendant claims that the plaintiff failed to show "permanent loss of bodily function" as required by the Political Subdivision Tort Claims Act. The Political Subdivision Tort Claims Act allows a plaintiff to recover pain and suffering damages from the city only for: "cases of permanent loss of bodily function, permanent disfigurement or permanent dismemberment where the medical and dental expenses . . . are in excess of $1,500."[7] Permanent loss of bodily function is present whenever an injured claimant is unable to perform bodily acts which the claimant was able to do or perform prior to sustaining the injury and that the loss of such ability is permanent.[8]

---

7. 42 Pa.C.S. §8553(c)(2)(ii).

8. *Walsh v. City of Philadelphia,* 526 Pa. 227, 241, 585 A.2d 445, 452 (1991).

At trial Dr. Barry Mann testified that plaintiff will never again be able to live unassisted, will never be able to care for himself, or even walk alone outside. Dr. Mann also testified that Mr. Stanley can't walk without the assistance of a walker. Mr. Stanley himself testified that he can no longer get around without a walker and that he must live in an assisted living facility.[9] It is simply disingenuous for the city to claim that this is not loss of bodily function.

In *Philadelphia v. Owens,*[10] plaintiff's doctor testified that the plaintiff had lost 20 percent of the range of motion in her lower back and that plaintiff could no longer play golf. The Pennsylvania Commonwealth Court held that "appellee was found by the trial court to be unable to perform physical acts which he was capable of performing prior to this injury. Therefore, appellee has lost a bodily function and is entitled to damages for pain and suffering pursuant to 42 Pa.C.S. §8553(c)."

Mr. Stanley can no longer walk without a walker and can no longer live independently. The jury could reasonably and easily conclude that Mr. Stanley suffered "permanent loss of bodily function." Indeed it would be unreasonable for a jury to conclude otherwise. This claim is without merit.

For the reasons stated above, the decisions of the trial court should be affirmed as to defendant's post-trial motions.

Plaintiff Stanley also alleges error. Plaintiff claims that the verdict should not have been molded to reduce the

9. N.T., vol. 4, p. 32.
10. *City of Philadelphia v. Owens,* 115 Pa. Commw. 28, 539 A.2d 512 (1988).

damages awarded to plaintiff. Before trial, plaintiff and additional defendant Mr. Reed entered into a release agreement, releasing Reed of all liability. Plaintiff alleges that the release language does not release the city for the negligence of its employee, Mr. Reed. However, as a matter of law, in releasing Reed the agent, plaintiff has also released city, the principal, for all claims of vicarious liability. The case law is clear, "[T]ermination of the claim against the agent extinguishes the derivative claim against the principal. A claim of vicarious liability is inseparable from the claim against the agent since any cause of action is based on the acts of only one tort-feasor."[11] As in this case, the plaintiff in *Mamalis v. Atlas Van Lines Inc.,* 522 Pa. 214, 560 A.2d 1380 (1989), claimed to have written the release to only release the agent and not the principal. The Pennsylvania Supreme Court clearly held that the two claims are inseparable.

The release in this case does not release the city from negligence concerning the maintenance of the traffic signal. The plaintiff cannot, however, maintain any claim for vicarious liability against the city after having released the city's agent. Accordingly, the trial court was correct in molding the damages to reflect the consequences of plaintiff signing the release of Mr. Reed.

For the reasons set forth above, the judgment of the court below should be affirmed.

---

11. *Mamalis v. Atlas Van Lines Inc.,* 522 Pa. 214, 221, 560 A.2d 1380, 1383 (1989).